ROY SASTROM *v.* PSYCHIATRIC SECURITY
REVIEW BOARD
(SC 17908)

GUY LEVINE *v.* PSYCHIATRIC SECURITY
REVIEW BOARD
(SC 17909)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued September 17, 2008—officially released April 28, 2009

*Richard E. Condon, Jr.*, assistant public defender, for the appellants (plaintiff in each case).

*Patrick B. Kwanashie*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellees (defendant in each case).

*Opinion*

ROGERS, C. J. In these certified appeals, we must determine whether the Superior Court has subject matter jurisdiction to decide the appeals brought by the plaintiffs, Roy Sastrom and Guy Levine,[1] from the declaratory rulings by the defendant, the psychiatric security review board (board), in which the board concluded that § 17a-581-44 of the Regulations of Connecti-

---

[1] We refer to Sastrom and Levine individually by name where necessary and collectively as the plaintiffs.

cut State Agencies[2] is valid because it does not conflict with General Statutes § 17a-599.[3] The Appellate Court concluded that the board's rulings are not among the final decisions that may be appealed to the Superior Court pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and affirmed the judgments of the trial court dismissing the plaintiffs' administrative appeals. We reverse the judgments of the Appellate Court because we conclude that the Superior Court did have jurisdiction over the administrative appeals from the board's declaratory rulings as to the validity of § 17a-581-44 of the regulations. We further conclude, however, that judgments should be rendered in favor of the board on the merits of the plaintiffs' administrative appeals because § 17a-581-44 of the regulations does not conflict with § 17a-599.

The relevant facts and procedural histories are set forth in the decisions of the Appellate Court and are not in dispute. Sastrom, the plaintiff in the first case, was committed on July 11, 1994, "to the jurisdiction of the [board] for a period of time not to exceed forty years after he was acquitted by reason of mental disease or defect of the charges of two counts of harassment

---

[2] Section 17a-581-44 of the Regulations of Connecticut State Agencies provides: "The [b]oard may order a person confined in a maximum security setting if the [b]oard finds that the acquittee poses a danger to self or others such that a maximum security setting is required."

Section 17a-581-2 (a) (6) of the Regulations of Connecticut State Agencies defines danger to self or to others as "the risk of imminent physical injury to others or self, and also includes the risk of loss or destruction of the property of others."

[3] General Statutes § 17a-599 provides in relevant part: "At any time the court or the board determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security. Any acquittee found so violent as to require confinement under conditions of maximum security shall not be confined in any hospital for psychiatric disabilities . . . unless such hospital . . . has the trained and equipped staff, facilities or security to accommodate such acquittee."

in the first degree in violation of General Statutes § 53a-182b (a), four counts of threatening in violation of General Statutes § 53a-62 (a) (2), and two counts of attempt to commit larceny in the fifth degree in violation of General Statutes §§ 53a-49 and 53a-125a. [Sastrom] initially was confined at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting), a maximum security mental health facility, but subsequently was transferred to the less restrictive setting of the Dutcher Enhanced Security Service of Connecticut Valley Hospital (Dutcher). While at Dutcher, he was moved from South 2, the enhanced treatment unit, to North 3, a community transition unit.

"On June 21, 2002, the treatment team granted [Sastrom's] request for 'Level 4' privileges, which included one hour per day on the grounds without supervision. On July 4, 2002, [Sastrom] signed himself out at 9 a.m., and was declared absent without leave when he was not present one hour later. [Sastrom] had wandered to a . . . wooded area near the hospital and fallen asleep. The next morning, as he was walking back to Dutcher, several staff members reported seeing him on a road. When a state police trooper arrived, [Sastrom] hid in some bushes. After several hours, the troopers, with the aid of a police dog, located [Sastrom] and returned him to the custody of the [board].

"Following his apprehension, [Sastrom] was returned to Whiting. The [board] held a hearing on July 12 and September 20, 2002, regarding the proper placement of [Sastrom]. In a memorandum of decision dated October 28, 2002, the [board] ordered that [Sastrom] remain confined at Whiting for the purposes of care, custody and treatment under maximum security conditions.

"In a petition for a declaratory [ruling] dated March 30, 2004, [Sastrom] sought a determination of whether his confinement in maximum security was appropriate

and whether § 17a-581-44 [of the regulations] was invalid in light of the specific violence requirement of § 17a-599. After a hearing, the [board] issued a decision on September 30, 2004. The [board] noted [Sastrom's] clinical progress and found that, on the basis of the hospital treatment team's recommendation, he could be treated in the less restrictive conditions at Dutcher.[4]

"The [board] concluded that [Sastrom] could not prevail with respect to his claim that § 17a-581-44 [of the regulations] was invalid because it conflicted with § 17a-599. The [board] determined that 'nothing in the statute suggests that its intent is to mandate actual violence as a prerequisite for placing acquittees[5] in maximum security settings. Rather, the statute evinces a concern that acquittees be placed in settings appropriate to the type of danger that they pose to themselves and others. Thus, far from being in conflict with the statute . . . § 17a-581-44 complements it.' " *Sastrom* v. *Psychiatric Security Review Board*, 100 Conn. App. 212, 214–16, 918 A.2d 902 (2007).

The plaintiff in the second case, Levine, was committed on March 6, 1992, "to the custody of the [board] for a period of time not to exceed 100 years after he was acquitted by reason of mental disease or defect of

---

[4] The board found that Sastrom "remains an individual who needs confinement because of a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others. However, as a result of sustained clinical gains, engagement in treatment and insight into his escape from [Dutcher] in July, 2002, he is no longer so dangerous that he requires confinement in a maximum security hospital setting. Accordingly, the answer to the first question in his petition for a declaratory ruling is no. He is neither so violent nor so dangerous at this time as to require maximum security confinement and may be transferred to the less restrictive treatment environment of Dutcher." *Sastrom* v. *Psychiatric Security Review Board*, supra, 100 Conn. App. 215 n.3.

[5] An " '[a]cquittee' " is a person found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13. General Statutes § 17a-580 (1).

two counts of murder in violation of General Statutes § 53a-54a. [Levine] was confined at [Whiting] . . . .

"On July 18, 2004, [Levine] petitioned the [board] for a declaratory ruling pursuant to General Statutes § 4-176 and § 17a-581-58 of the Regulations of Connecticut State Agencies. Specifically, [Levine] sought a ruling on whether he met the statutory standard for confinement in a maximum security setting and whether § 17a-581-44 was invalid in light of the specific violence requirement of § 17a-599. On October 1, 2004, the [board] held a hearing on the petition. On November 29, 2004, the [board] issued its declaratory ruling and found that [Levine], because he was so violent or so dangerous, could safely be treated only in the maximum security setting at Whiting." *Levine* v. *Psychiatric Security Review Board*, 100 Conn. App. 224, 225–26, 918 A.2d 900 (2007).

The board again concluded that "nothing in the statute suggests that its intent is to mandate actual violence as a prerequisite for placing acquittees in maximum security settings. Rather, the statute evinces a concern that acquittees be placed in settings appropriate to the type of danger that they pose to themselves and others. Thus, far from being in conflict with the statute . . . § 17a-581-44 complements it." (Internal quotation marks omitted.) Id., 226.

The plaintiffs appealed from the board's declaratory rulings to the Superior Court.[6] The board argued that there was no statutory right to appeal from its declaratory rulings, and, therefore, the court lacked subject matter jurisdiction. The trial court agreed with the board and concluded that it lacked subject matter jurisdiction because the decisions being appealed were not

---

[6] Sastrom did not appeal from the board's decision with respect to his placement in Dutcher, and Levine did not appeal from his placement in Whiting.

within the exclusive list of appealable orders set forth in General Statutes § 17a-597. Accordingly, it dismissed the appeals. *Sastrom* v. *Psychiatric Security Review Board,* supra, 100 Conn. App. 216; see also *Levine* v. *Psychiatric Security Review Board,* supra, 100 Conn. App. 227.

The plaintiffs appealed from the trial court's judgments of dismissal to the Appellate Court, which concluded that the UAPA does not permit "appeal[s] for every declaratory ruling, but only for those that meet the conditions of [General Statutes] § 4-183, as restricted by [General Statutes] §§ 4-186 (f) and 17a-597." *Sastrom* v. *Psychiatric Security Review Board,* supra, 100 Conn. App. 223; see also *Levine* v. *Psychiatric Security Review Board,* supra, 100 Conn. App. 227. We granted certification in each case to determine whether the Appellate Court properly concluded that the Superior Court lacked subject matter jurisdiction over the plaintiffs' appeals from the declaratory rulings issued by the board. *Sastrom* v. *Psychiatric Security Review Board,* 282 Conn. 920, 920–21, 925 A.2d 1101 (2007); see also *Levine* v. *Psychiatric Security Review Board,* 282 Conn. 921, 925 A.2d 1101 (2007).[7] We reverse the judgments of the Appellate Court.

I

Our resolution of the certified question is guided by our well settled standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the

---

[7] We granted the plaintiffs' petitions for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court lacked subject matter jurisdiction to decide the plaintiff's appeal from the declaratory ruling issued by the [board]?" *Sastrom* v. *Psychiatric Security Review Board,* supra, 282 Conn. 920–21; see also *Levine* v. *Psychiatric Security Review Board,* supra, 282 Conn. 921.

type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Ferguson Mechanical Co.* v. *Dept. of Public Works*, 282 Conn. 764, 770–71, 924 A.2d 846 (2007). This case raises two jurisdictional issues, which we address in turn.

A

"We have declared that [t]here is no absolute right of appeal to the courts from a decision of an administrative agency. . . . Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created . . . and can be acquired and exercised only in the manner prescribed. . . . In the absence of statutory authority, therefore, there is no right of appeal from [an agency's] decision . . . ." (Internal quotation marks omitted.) *Fullerton* v. *Administrator, Unemployment Compensation Act*, 280 Conn. 745, 760, 911 A.2d 736 (2006).

In the cases before us, we must determine whether the UAPA authorizes the Superior Court to assume jurisdiction over appeals from the board's declaratory rulings as to the validity of § 17a-581-44 of the regulations. The plaintiffs claim that the Appellate Court improperly affirmed the judgments of the trial court dismissing their administrative appeals. Specifically, the plaintiffs argue that the legal question presented in these cases is inherently a judicial matter and should not be left to the discretion of administrative bodies. In support of this assertion, the plaintiffs quote from our holding in *Dyous* v. *Psychiatric Security Review Board*, 264 Conn. 766, 777, 826 A.2d 138 (2003), that the decision to confine an acquittee under conditions of maximum security is "best left to the professional discretion of the board, whose mandate is the protection of the general public,"

because of its expertise regarding matters of mental health. They argue that, because the board does not have similar expertise in the law, the legislature clearly did not establish the board as the final arbiter of the validity of its own regulations. They further maintain that the conclusions of the trial court and the Appellate Court effectively grant the board exclusive authority and jurisdiction to determine the validity of its own regulations, requiring complete deference to the board's legal conclusions while affording only substantial deference to certain findings of fact, which they claim is an absurd and unworkable result.

The construction of the UAPA, as with other statutes, presents a question of law subject to plenary review. *Stiffler* v. *Continental Ins. Co.*, 288 Conn. 38, 42, 950 A.2d 1270 (2008). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 43.

We begin with the text of the UAPA. Section 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court . . . ." A " '[f]inal decision,' " as defined by § 4-166 (3) (B), includes a "declaratory ruling issued by an agency pursuant to section 4-176 . . . ."[8] It is clear from the language of § 4-183 (a) that, in general, persons who are aggrieved by a declaratory ruling of an agency may appeal that ruling to the Superior Court after exhausting their administrative remedies. See *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, 75 Conn. App. 215, 220–21, 815 A.2d 281 (2003) (acknowledging general right to appeal declaratory rulings).

The Superior Court's jurisdiction over administrative appeals from final decisions of the various agencies is not, however, unlimited. General Statutes § 4-185 (b) provides in relevant part that "this chapter shall apply to all agencies and agency proceedings not *expressly* exempted in this chapter." (Emphasis added.) The legislature has expressed one such exemption in § 4-186 (f), which provides in relevant part: "The provisions of section 4-183 shall apply to the [board] in the manner described in section 17a-597 . . . ." Accordingly, appeals from final decisions, including declaratory rulings, of the board are governed by § 17a-597, which sets forth respective lists of appealable and nonappealable decisions of the board.

Specifically, § 17a-597 (a) provides that orders of the board entered pursuant to General Statutes § 17a-584

---

[8] General Statutes § 4-176 provides in relevant part: "(a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation . . . ."

(2) or (3),[9] or General Statutes § 17a-587,[10] *may be appealed* to the Superior Court pursuant to § 4-183, whereas § 17a-597 (b) provides that a decision by the board that an acquittee should be discharged made pursuant to § 17a-584 (1),[11] or General Statutes § 17a-592[12] or § 17a-593 (d),[13] *shall not be subject to judicial*

[9] General Statutes § 17a-584 provides in relevant part: "At any hearing before the board considering the discharge, conditional release or confinement of the acquittee, except a hearing pursuant to section 17a-592 or subsection (d) of section 17a-593, the board shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, shall do one of the following . . .

"(2) If the board finds that the acquittee is a person who should be conditionally released, the board shall order the acquittee conditionally released subject to such conditions as are necessary to prevent the acquittee from constituting a danger to himself or others.

"(3) If the board finds that the acquittee is a person who should be confined, the board shall order the person confined in a hospital for psychiatric disabilities . . . for custody, care and treatment."

[10] General Statutes § 17a-587 provides in relevant part: "If at any time after the confinement of an acquittee in a hospital for psychiatric disabilities . . . pursuant to order of the board, the superintendent of such hospital . . . is of the opinion that the acquittee's psychiatric supervision and treatment would be advanced by permitting the acquittee to leave such hospital . . . temporarily, the superintendent . . . shall apply to the board for an order authorizing temporary leaves. . . . The board shall grant the application if it concludes that the acquittee's temporary leave, under the conditions specified, would not constitute a danger to himself or others. . . ."

[11] Pursuant to § 17a-584 (1), if the board, after a hearing pertaining to an acquittee's discharge, conditional release or confinement, "finds that the acquittee is a person who should be discharged, it shall recommend such discharge to the court pursuant to section 17a-593."

[12] General Statutes § 17a-592 provides in relevant part: "(a) The superintendent of any hospital for psychiatric disabilities in which an acquittee has been confined . . . pursuant to an order of the board or any person or agency responsible for the supervision or treatment of a conditionally released acquittee may request the board to recommend to the court discharge of the acquittee from custody. . . .

"(b) The board may, on its own motion, consider whether to recommend discharge of the acquittee from custody. . . .

"(c) If the board decides to recommend discharge of the acquittee, the board shall make such recommendation pursuant to section 17a-593."

[13] General Statutes § 17a-593 (d) provides in relevant part: "The court shall forward any application for discharge received from the acquittee and any petition for continued commitment of the acquittee to the board. The board

*review* pursuant to § 4-183.[14] Thus, the language of § 17a-597 provides a right of appeal from a decision of the board ordering an acquittee's confinement, conditional release or temporary leave, but expressly exempts from judicial review decisions recommending to the court that an acquittee be discharged from the board's jurisdiction.

Section 17a-597, however, does not state expressly whether declaratory rulings as to the validity of regulations issued by the board pursuant to § 4-176 (a) are appealable. Simply put, it does not identify the board's declaratory rulings under § 4-176 (a) among either the list of appealable decisions set forth in § 17a-597 (a) or the list of nonappealable decisions set forth in § 17a-597 (b). Accordingly, we conclude that the language of § 4-186 (f) is ambiguous with respect to the board's declaratory rulings. We therefore must look beyond the text of the statute to discern whether the legislature intended to subject the board's declaratory rulings to judicial review.[15] See *Stiffler* v. *Continental Ins. Co.*, supra, 288 Conn. 43.

shall, within ninety days of its receipt of the application or petition, file a report with the court, and send a copy thereof to the state's attorney and counsel for the acquittee, setting forth its findings and conclusions as to whether the acquittee is a person who should be discharged. . . ."

[14] General Statutes § 17a-597 provides in relevant part: "(a) Any order of the board entered pursuant to subdivision (2) or (3) of section 17a-584 or pursuant to section 17a-587 may be appealed to the Superior Court pursuant to section 4-183. . . .

"(b) A decision by the board that the acquittee is a person who should be discharged made pursuant to subdivision (1) of section 17a-584, section 17a-592 or subsection (d) of section 17a-593 shall not be subject to judicial review pursuant to section 4-183."

[15] The board, relying on our construction of § 17a-599 in *Dyous*, claims that the board's declaratory rulings are exempt from the provisions of § 4-183, as limited by §§ 4-186 (f) and 17a-597. We disagree.

Section 17a-599 provides in relevant part that "[a]t any time the court or the board determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security. . . ." In *Dyous* v. *Psychiatric Security Review Board*, supra, 264 Conn. 775–76, we

Our review of the history and statutory framework of the UAPA, as well as relevant case law, leads us to conclude that, although the legislature intended to limit judicial scrutiny of certain *factual* determinations made by the board, it expressed no intention to prevent courts from scrutinizing the board's *legal* conclusions as to whether a regulation is valid or ultra vires. Prior to July 1, 1989, the UAPA generally permitted appeals from declaratory rulings as to the validity of a regulation, but only in contested cases. See General Statutes (Rev. to 1987) §§ 4-176[16] and 4-

invoked the canon of statutory construction known as expressio unius est exclusio alterius—the expression of one thing is the exclusion of another—and concluded that § 17a-597 sets forth an exclusive list of appealable decisions of the board. Because that list includes only " '[a]ny order of the board entered pursuant to subdivision (2) or (3) of section 17a-584 or pursuant to section 17a-587' "; id., 775; we further concluded that the legislature expressly limited judicial review to the board's orders to confine, conditionally release or grant temporary leave to an acquittee. Id., 774–76. Orders regarding the conditions of an acquittee's confinement, therefore, were excluded. Id., 777. Accordingly, we concluded that the courts have no jurisdiction to hear an administrative appeal from an order by the board to confine an acquittee under conditions of maximum security pursuant to § 17a-599. Id., 778.

The maxim expressio unius est exclusio alterius has force, however, "only when the items expressed are members of an associated group or series, justifying the inference that the items not mentioned were excluded by deliberate choice." See 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:23, p. 405-12. The court in *Dyous* properly applied this rule because the factual determination of whether an acquittee should be confined is readily identified with a factual determination regarding the conditions of confinement. Unlike the fact based determinations presented in *Dyous*, the board's legal conclusions as to the validity of its regulations are clearly distinguishable from the group of factual determinations set forth in § 17a-597 (a). Invocation of the canon is, therefore, not appropriate in this case. Accordingly, *Dyous* does not answer the question before us.

[16] General Statutes (Rev. to 1987) § 4-176 provides in relevant part: "Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such

183 (a);[17] *Ratick Combustion, Inc.* v. *State Heating, Piping & Cooling Work Examining Board*, 34 Conn. App. 123, 127–28, 640 A.2d 152 (1994); *Shearson American Express, Inc.* v. *Banking Commissioner*, 39 Conn. Sup. 462, 464, 466 A.2d 800 (1983). The UAPA also permitted aggrieved persons to petition the courts directly for declaratory judgments with respect to an agency's rulings on the validity of its regulations in noncontested cases, subject to the exhaustion of their administrative remedies. See General Statutes (Rev. to 1987) § 4-175;[18] *Ratick Combustion, Inc.* v. *State Heating, Piping & Cooling Work Examining Board*, supra, 127; *Shearson American Express, Inc.* v. *Banking Commissioner*, supra, 466; see also *Commission on Hospitals & Health Care* v. *Stamford Hospital*, 208 Conn. 663, 672, 546 A.2d 257 (1988). Thus, all agency determinations regarding the validity of regulations were subject to judicial scrutiny under the UAPA, *either* by way of an administrative appeal *or* in a direct action for a declaratory judgment.[19] Nothing in the UAPA exempted

ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. . . ."

[17] General Statutes (Rev. to 1987) § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter . . . ."

[18] General Statutes (Rev. to 1987) § 4-175 provides in relevant part: "The validity or applicability of a regulation or order of an agency may be determined in an action for declaratory judgment brought in the superior court . . . if the regulation or order, or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. . . . A declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder."

[19] Under this earlier scheme, the nature of the action, administrative appeal or declaratory judgment, dictated the level of scrutiny applied by the court. See *Ratick Combustion, Inc.* v. *State Heating, Piping & Cooling Work Examining Board*, supra, 34 Conn. App. 128–29 (judicial review in adminis-

the board from this statutory framework. See General Statutes (Rev. to 1987) §§ 4-185 and 4-186; see also 28 S. Proc., Pt. 15, 1985 Sess., pp. 4912–13, remarks of Senator Richard Johnston; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1985 Sess., pp. 1439–40.

In 1988, the legislature passed No. 88-317 of the 1988 Public Acts (P.A. 88-317), which substantially revised the UAPA. See *Vernon Village, Inc.* v. *Carothers*, 217 Conn. 130, 131, 585 A.2d 76 (1991). The purpose of this revision, in part, was to "simplify the [circumstances] that require appeal [from declaratory rulings] as oppose[d] to independent action." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1988 Sess., p. 188; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988 Sess., p. 380. Accordingly, the legislature subjected declaratory rulings on the validity of regulations, in both contested and noncontested cases, to judicial review by way of appeal; see General Statutes §§ 4-176 (a), 4-183 (a) and 4-166 (3); and limited direct petitions to the Superior Court for declaratory judgments to those circumstances wherein the petitioner first had requested a declaratory ruling from the agency, but did not receive one. See General Statutes §§ 4-176 (e)[20] and 4-175 (a);[21] *LoPresto* v. *State Employ-*

---

trative appeal confined to record whereas declaratory judgment actions required evidentiary hearing; further, UAPA explicitly provided for remand to agency in administrative appeal, but such disposition not permissible in declaratory judgment action).

[20] General Statutes § 4-176 (e) provides: "Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: (1) Issue a ruling declaring the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances, (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under section 4-168, on the subject, or (5) decide not to issue a declaratory ruling, stating the reasons for its action."

[21] General Statutes § 4-175 (a) provides in relevant part: "If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency (1)

*ees Retirement Commission*, 234 Conn. 424, 432 n.15, 662 A.2d 738 (1995) (declaratory ruling constitutes final decision for purposes of appeal under § 4-183); *Hill* v. *State Employees Retirement Commission*, 83 Conn. App. 599, 605, 851 A.2d 320 (trial court had jurisdiction to entertain administrative appeal because declaratory ruling is appealable regardless of whether it arises in contested case), cert. denied, 271 Conn. 909, 859 A.2d 561 (2004). Therefore, once an agency has opined on the validity of its regulations, an aggrieved party may no longer bring an independent action in the Superior Court for a declaratory judgment, but must instead rely on the record before the agency in seeking a review of the agency's legal conclusions in an administrative appeal. See *Vincenzo* v. *Chairman, Board of Parole*, 64 Conn. App. 258, 263, 779 A.2d 843 (2001); see also General Statutes §§ 4-175 (a) and 4-183 (i) and (j).[22] We conclude from this history that the legislature, in enacting P.A. 88-317, indicated its intent to continue

does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176, within sixty days of the filing of a petition for a declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. . . ."

[22] General Statutes § 4-183 provides in relevant part: "(i) The appeal shall be conducted by the court without a jury and shall be confined to the record. . . .

"(j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

allowing for judicial review of all declaratory rulings by the various state agencies, in both contested and noncontested cases, by including declaratory rulings among the list of final decisions that may be appealed to the Superior Court pursuant to § 4-183. Nothing in this history *expresses* a legislative intent to limit that broad grant of jurisdiction. See General Statutes § 4-185 (b).

Our conclusion that the legislature did not intend to restrict judicial review of the board's declaratory rulings regarding the validity of its regulations finds further support in *Hill* v. *State Employees Retirement Commission*, supra, 83 Conn. App. 601, 610–11, wherein the Appellate Court held that an applicant for a disability retirement pension who had received an adverse decision from the state medical examining board (medical board) was not entitled to review of that board's decision by the state employee's retirement commission, but could seek the commission's review of the medical board's legal conclusion that it was collaterally estopped from making an independent determination of whether the applicant's injury was service connected in light of previous workers' compensation proceedings arising out of the same facts. In *Hill*, the Appellate Court observed, and we agree, that "[i]t is logical to assume that the legislature intended to designate the medical board as the sole arbiter of *medical eligibility* for disability retirement pension benefits so as to take advantage of the board's medical expertise. See *Briggs* v. *State Employees Retirement Commission*, [210 Conn. 214, 219, 554 A.2d 292 (1989)]. . . . [I]t is not logical to assume that the legislature also intended to mandate the same deference with respect to eligibility *as a matter of law*." (Emphasis added.) *Hill* v. *State Employees Retirement Commission*, supra, 610.

Likewise, it is logical that the decision to confine an acquittee under conditions of maximum security would

be "best left to the professional discretion of the board, whose mandate is the protection of the general public," because of its expertise regarding matters of mental health. *Dyous* v. *Psychiatric Security Review Board,* supra, 264 Conn. 777. The board's expertise in matters of mental health, however, does not provide a sound basis for the conclusion that the legislature intended to defer to the board's legal analysis as to the validity of its regulations. Cf. *Cumberland Farms, Inc.* v. *Groton,* 262 Conn. 45, 64, 808 A.2d 1107 (2002) (declining to relegate to zoning board responsibility of constitutional fact-finding in absence of expertise).

We conclude, on the basis of its language and history, that the UAPA clearly provides for judicial oversight with respect to the validity of the regulations promulgated by the various agencies, including the board. We further conclude that the list of fact based determinations excluded from judicial review in § 17a-597 does not express a legislative intent, pursuant to §§ 4-185 (b) and 4-186 (f), to limit appellate review of the board's legal conclusions as to the validity of its own regulations. If the legislature had intended to include the board's declaratory rulings as to the validity of its regulations among the exemptions expressed in § 17a-597, it easily could have expressed that intent. See *In re Darlene C.,* 247 Conn. 1, 11, 717 A.2d 1242 (1998). Accordingly, the Appellate Court improperly concluded that the Superior Court lacks jurisdiction over administrative appeals from the board's declaratory rulings as to the validity of its regulations.

### B

Our conclusion that the UAPA allows the court to assume jurisdiction over the plaintiffs' administrative appeals does not end our discussion. We next must address the board's argument that the courts lack jurisdiction in the present cases because the plaintiffs are

not aggrieved by the board's declaratory rulings. As we noted previously in this opinion, § 4-183 (a) permits a person who has exhausted all available administrative remedies *and who is aggrieved by a final decision* to appeal to the Superior Court. The board argues that the plaintiffs have failed to demonstrate either statutory or classical aggrievement and, therefore, do not have standing to appeal the board's rulings. We disagree.

"It is . . . fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. . . . Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 538, 833 A.2d 883 (2003). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 400, 920 A.2d 1000 (2007). "If a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Bingham* v. *Dept. of Public Works*, 286 Conn. 698, 701, 945 A.2d 927 (2008).

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury

to an interest protected by that legislation." (Internal quotation marks omitted.) Id., 702.

In this case, the plaintiffs have not identified, and we do not find, any legislation, either in the board's enabling act, General Statutes § 17a-580 et seq., or elsewhere in the General Statutes, that confers standing on the plaintiffs. See id., 703–705. Accordingly, we conclude that they are not statutorily aggrieved.

With respect to classical aggrievement under the UAPA, the plaintiffs must make a two part showing. "First, [they] must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, [they] must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) Id., 702. Moreover, the plaintiffs must demonstrate a relation to the action of the board beyond "the fact that they were the petitioners. If this in and of itself were sufficient to appeal the adverse declaratory ruling to the Superior Court, the provisions of § 4-183 requiring aggrievement would be meaningless." (Internal quotation marks omitted.) Id., 705–706; id., 706 (expansive right to petition for declaratory ruling under § 4-176 does not confer automatic right to appeal under § 4-183).

The plaintiffs in this case have asserted a legal interest in the conditions of their confinement. Specifically, the plaintiffs have asserted that, pursuant to § 17a-599, they are entitled to be confined in a less restrictive setting if the board finds that they are not "so violent as to require confinement under conditions of maximum security." The plaintiffs' asserted interest clearly is personal to them because, unlike members of the general public, an improper application of § 17a-599 might subject them to stricter conditions of confinement than the

conditions to which they otherwise would be entitled. Further, the plaintiffs allege that the board's interpretation of § 17a-581-44 of the regulations improperly broadens the scope of § 17a-599, subjecting them to conditions of maximum security confinement that the statute otherwise would not allow. Accordingly, we conclude that the plaintiffs are classically aggrieved because there is a possibility, as distinguished from a certainty, that the board's declaratory rulings have affected their alleged interest in being confined under conditions that are less than maximum security conditions.[23] The Appellate Court, therefore, improperly affirmed the judgments of the trial court dismissing the plaintiffs' administrative appeals for lack of subject matter jurisdiction.

## II

Because the Appellate Court and the trial court both concluded that the trial court lacked subject matter jurisdiction over the plaintiffs' administrative appeals, neither court reached the merits of the plaintiffs' claims. Ordinarily under these circumstances, we would remand the case to the trial court for a review of the plaintiffs' claims. Subsequent to oral argument in this case, however, we ordered the parties to submit supplemental briefs addressing the following questions: "(1) Does § 17a-581-44 of the [regulations] . . . conflict with . . . § 17a-599?" and "(2) If the answer to question one is yes, should the regulation be declared invalid?" The record on appeal therefore is adequate for our

---

[23] Although Sastrom no longer is confined under conditions of maximum security, we conclude that his claim is not moot because he remains under the jurisdiction of the board and subject to the board's biennial review of both his status as a person who should be confined and the conditions of his confinement. See General Statutes § 17a-585. Accordingly, a determination that § 17a-581-44 of the regulations is invalid would result in practical relief to Sastrom because, at his next biennial review and thereafter, the board no longer could apply the § 17a-581-44 standard for determining the conditions of his confinement.

review of the merits of the plaintiffs' claims because: (1) all parties have briefed their claims to this court; and (2) their claims present issues of law that are subject to plenary review by this court. See *Testa* v. *Geressy*, 286 Conn. 291, 313–14, 943 A.2d 1075 (2008) (reviewing merits of plaintiff's claims after concluding that trial court improperly declined to review claims). In light of this record, and because this issue is one of first impression and a question of law over which we exercise plenary review; *Farmers Texas County Mutual* v. *Hertz Corp.*, 282 Conn. 535, 541, 923 A.2d 673 (2007); see also *Stiffler* v. *Continental Ins. Co.*, supra, 288 Conn. 42; we conclude that a final resolution of the plaintiffs' administrative appeals by this court will best serve the interests of judicial economy. See *Testa* v. *Geressy*, supra, 314, quoting *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d 906 (1990) ("because the administrative record before us on appeal is identical to that which was before the trial court, the interests of judicial economy would not be served by a remand in this case"). Accordingly, we address the plaintiffs' claim that § 17a-581-44 of the regulations conflicts with § 17a-599 and, therefore, is invalid.

The plaintiffs first claim that § 17a-581-44 of the regulations conflicts with § 17a-599 because the regulation subjects an acquittee to maximum security confinement under a more inclusive standard than the standard set forth in the statute. Specifically, the plaintiffs argue that § 17a-581-44 of the regulations, which subjects an acquittee who "poses a danger to self or others" to the possibility of maximum security confinement, bestows upon the board broader discretion than the legislature had intended when it enacted § 17a-599, which subjects acquittees to maximum security confinement if they are found to be "so violent as to require [such] confinement . . . ." The plaintiffs' argument necessarily is

premised on an assumption that § 17a-599 does not allow the board discretion to commit to maximum security confinement acquittees whom the board does not find to be "so violent as to require confinement under conditions of maximum security . . . ." We disagree with this premise.

The text of § 17a-599 provides in relevant part: "At any time the court or the board determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security. Any acquittee found so violent as to require confinement under conditions of maximum security shall not be confined in any hospital for psychiatric disabilities . . . unless such hospital . . . has the trained and equipped staff, facilities or security to accommodate such acquittee." The second sentence of the statute clearly expresses a legislative intent to prohibit the placement of an acquittee in a security setting that is less than maximum if that acquittee is determined to be so violent as to require maximum security confinement. Contrary to the plaintiffs' position, however, nothing in the statute limits the board's discretion with respect to the placement of acquittees who are not found to be so violent as to require maximum security confinement. Thus, § 17a-599 does not contemplate that *only* "so violent" acquittees may be confined under conditions of maximum security.

This interpretation of § 17a-599 is buttressed by a review of the statutory scheme of which § 17a-599 is a part. Section 17a-584 specifically provides that the board's "primary concern" in considering the confinement of acquittees "is the protection of society . . . ." In addition, § 17a-584 (3) provides that "[i]f the board finds that the acquittee is a person who should be confined, the board shall order the person confined in a hospital for psychiatric disabilities . . . for custody,

care and treatment." Thus, while the board's consideration of an acquittee's placement must focus first on the interests of society, the board also must facilitate the care and treatment needs of the acquittee. Confinement under conditions of maximum security reasonably could further both purposes. See General Statutes § 17a-561 (listing purposes served by Whiting). As we stated in *Dyous* v. *Psychiatric Security Review Board*, supra, 264 Conn. 777, decisions with respect to the danger the acquittee poses to others and the appropriateness and type of treatment are best left to the professional discretion of the board. Those concerns would be served better when the board has greater, not less, discretion to determine the placement of acquittees consistent with the requirements of due process.[24]

Thus, in deferring to the professional judgment of the board in determining the placement of acquittees who are not found so violent as to require maximum security confinement, our legislature has struck a proper balance between the plaintiffs' liberty interests and the board's legitimate interest in protecting public safety. Accordingly, we reject the plaintiffs' contention that the legislature has limited the board's discretion as to which acquittees under its jurisdiction may be confined in maximum security settings. Having rejected the plaintiffs' predicate assumption that § 17a-599 limits the board's discretion, we further reject the plaintiffs' ultimate claim that § 17a-581-44 of the regulations con-

[24] Legislative deference to the board with respect to decisions concerning the conditions of an acquittee's confinement is consistent with due process. In *Youngberg* v. *Romeo*, 457 U.S. 307, 321–22, 102 S. Ct 2452, 73 L. Ed. 2d 28 (1982), the United States Supreme Court held that, in balancing the liberty interests of involuntarily committed individuals against the legitimate interests of the state, due process requires only that government actors exercise professional judgment as to the needs of such individuals and the safety of others in making decisions regarding the conditions of the individual's confinement. Further, such decisions by professional personnel are entitled to a presumption of correctness. Id., 323.

flicts with § 17a-599 in that it improperly expands the board's authority under the statute.

The judgments of the Appellate Court are reversed and the cases are remanded to that court with direction to reverse the judgments of the trial court and to remand the cases to the trial court with direction to affirm the decisions of the psychiatric security review board.

In this opinion the other justices concurred.