******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MULLINS, C. J., with whom D'AURIA, J., joins, concurring in part and dissenting in part. It is undisputed that the availability of declaratory relief from an administrative decision is a creature of statute and that the statutory provisions providing for such relief should be strictly construed. See, e.*g.*, *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, 319 Conn. 367, 380–88, 125 A.3d 905 (2015) (*Kleen Energy*). I write separately because, in my view, the majority stretches the declaratory judgment statute, General Statutes § 4-175, beyond its limits.

Section 4-175 permits declaratory relief from an agency decision only when a plaintiff seeks guidance as to (1) the validity of a state regulation, or (2) the applicability of a state statute, state regulation, or final decision of the agency to specified circumstances. See General Statutes § 4-175 (a). In the present case, the plaintiffs, Vistra Corp. and its subsidiaries,[1] seek neither. Instead, the plaintiffs' request for a declaratory judgment only calls for the interpretation of a negotiated settlement agreement. Because the relief sought requires neither the application nor the construction of a statute within the agency's jurisdiction,[2] I would conclude that the trial court lacked jurisdiction to issue a declaratory judgment under § 4-175 (a), and, therefore, I would affirm the judgment of the trial court on that alternative ground. Accordingly, although I agree with parts I and II of the majority opinion, I respectfully dissent from part III.

When the issue involves the applicability of a state statute, the statutory authorization for declaratory judgments extends only to those contractual disputes that exceed "a question of the intent of the parties"; *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control*, 283 Conn. 672, 684, 931 A.2d 159 (2007) (*Wheelabrator Lisbon*); and turn on "a question of legislative intent and

---

[1] The majority identifies all of the plaintiffs in footnote 1 of its opinion.

[2] I agree with the majority that the relief requested did not involve the applicability of any state regulation or final decision for purposes of establishing jurisdiction to render a declaratory judgment under § 4-175 (a). See footnote 16 of the majority opinion and accompanying text.

public policy . . . .” Id., 687; see also, e.g., *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 319 Conn. 384–88. Specifically, the resolution of the contractual dispute must require the application of a particular provision or the construction of specific terms of a statute that is within the agency’s jurisdiction. See, e.g., *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 384–88.[3]

In their complaint, the plaintiffs sought, among other things, a declaratory judgment establishing that their compliance with the requirements of a July, 2022 settlement agreement (settlement agreement) with the defendant, the Public Utilities Regulatory Authority (PURA), relieved them of their obligations under Connecticut’s renewable portfolio standards (RPS) program for the entirety of 2022.[4] The plaintiffs did not contest the existence or the amount of their 2022 RPS obligations under General Statutes § 16-245a. The plaintiffs

---

[3] In *Kleen Energy* and *Wheelabrator Lisbon*, we directly addressed only the authority of an agency to issue a declaratory ruling under General Statutes § 4-176 (a). See *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 319 Conn. 380–88; *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control*, supra, 283 Conn. 684–90. Similar to § 4-175 (a), § 4-176 (a) provides in relevant part that “[a]ny person may petition an agency . . . for a declaratory ruling as to . . . *the applicability to specified circumstances of a provision of the general statutes* . . . on a matter within the jurisdiction of the agency.” (Emphasis added.) Because §§ 4-175 (a) and 4-176 (a) operate conjunctively; see, e.g., *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 322–24, 968 A.2d 396 (2009); our reasoning in *Kleen Energy* and *Wheelabrator Lisbon* regarding the “applicability” of a state statute language in § 4-176 (a) also applies to the virtually identical language in § 4-175 (a).

[4] The RPS program requires all licensed electric suppliers “to demonstrate that certain percentages of the electricity that they supply have been generated by specific types or classes of renewable energy sources (i.e., solar, wind, hydroelectric, etc.).” *Direct Energy Services, LLC* v. *Public Utilities Regulatory Authority*, 347 Conn. 101, 109, 296 A.3d 795 (2023); see General Statutes §§ 16-245 (g) (4) and 16-245a (a). In an uncontested proceeding, PURA annually assesses compliance with the RPS of the preceding calendar year (RPS proceeding). See General Statutes § 16-245 (k). The extent of an electric supplier’s annual RPS obligations therefore depends on the total amount of electricity that it

instead contended that PURA agreed in the settlement agreement to fully absolve them of those obligations upon their payment of alternative compliance payments (ACPs) in an amount calculated pursuant to paragraph 4 of that agreement. Properly understood, then, the plaintiffs sought only a determination of the meaning of the settlement agreement and the intended effect of the ACPs paid pursuant to paragraph 4.[5] That issue is an

supplied during the preceding calendar year. See, e.g., General Statutes §§ 16-243q (a) (4) and 16-245a (a) (17).

"Electric suppliers can achieve compliance with these minimum standards by purchasing [renewable energy credits (RECs)]. See General Statutes § 16-245a (b) (1) (A). RECs are inventions of state property law whereby the renewable energy attributes are unbundled from the energy itself and sold separately. . . . Each REC represents one megawatt-hour of renewable energy produced by a third-party generator." (Citation omitted; internal quotation marks omitted.) *Direct Energy Services, LLC* v. *Public Utilities Regulatory Authority*, supra, 347 Conn. 109–10. "In lieu of procuring and settling RECs, [a licensed electric supplier] can make an [a]lternative [c]ompliance [p]ayment . . . to satisfy all or a portion of their annual RPS obligation." Public Utilities Regulatory Authority, Dept. of Energy & Environmental Protection, Renewable Portfolio Standards (September 18, 2025) p. 3, available at https:// portal.ct.gov/-/media/pura/electric/el-adds/master-rps--instructions- --final92225.pdf?rev=23bdf3859e0143429402b91fce39a11c&hash=7 C8EF68BD5CE3253943DD17B99994D92 (last visited May 18, 2026).

[5] Paragraph 4 of the settlement agreement provides in relevant part: "[N]o later than thirty . . . days after PURA's approval of this [s]ettlement [a]greement, each [plaintiff] shall make a filing in its licensing docket demonstrating 2022 RPS compliance by providing: (i) *a completed copy of* [*e*]*xhibit A . . . using the most* [*up-to-date*] *load data from each* [*plaintiff's*] *system based on its* [*ISO New England Inc. (ISO-NE)*] *load asset number*, (ii) [s]ettled [c]ertificate reports showing renewable energy credits retired, and (iii) if applicable, *a receipt showing any* [*ACP*]*, as determined on* [*e*]*xhibit A, paid to the* [*electric distribution companies (EDCs)*] *and* [*t*]*he* [*Connecticut*] *Green Bank*. . . . Each [plaintiff] agrees to pay the full amount owed for [a]ssessments and RPS [o]bligations if final determinations indicate the amounts paid by [them] as part of this [s]ettlement [a]greement, using the calculations contemplated in this paragraph 4, did not meet their full obligations." (Emphasis added.)

"Exhibit A is PURA's annual RPS compliance form . . . [that] calculates the ACP as well as how payment is allocated to each EDC and, where applicable, to the [Connecticut] Green Bank." Public Utilities Regulatory Authority, Dept. of Energy & Environmental Protection, Renewable Portfolio Standards (September 18, 2025) p. 4, available at https://portal.ct.gov/-/media/pura/electric/el-adds/master-rps- -instructions---final92225.pdf?rev=23bdf3859e0143429402b91fce3

ordinary question of contract interpretation that may be resolved based on the contractual language alone and without regard to any statute that is within PURA's jurisdiction. As such, the plaintiffs' claim for a declaratory judgment fell outside the purview of § 4-175 (a).

Our decision in *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 319 Conn. 367, is instructive. In that case, pursuant to its authority under General Statutes § 16-243m, PURA developed a form contract for the provision of electrical capacity for use "between electric distribution companies and generators of electrical capacity" (master agreement). Id., 370–71. Two private parties entered into a contract using the master agreement, and PURA approved that contract. See id., 373–74. Thereafter, "a dispute [between those private parties] arose over the manner in which the [pricing] provision should operate under certain circumstances . . . ." Id., 374–75. PURA argued, inter alia, that it had jurisdiction under General Statutes § 4-176 (a) to issue a declaratory ruling resolving the contractual dispute "because it was applying the provisions of a statute within its jurisdiction to the circumstances of the dispute." Id., 384. In support of that argument, the Office of Consumer Counsel, an intervening defendant, highlighted several subsections of § 16-243m that required the master agreement to further certain policy goals relevant to the intended operation of the pricing provision at issue. See id.; see also id., 372–73. We rejected that argument because, despite the potential relevance of those statutory provisions, PURA "did not rely on or even refer to [those] provisions" to resolve the contractual dispute in its final decision or

9a11c&hash=7C8EF68BD5CE3253943DD17B99994D92 (last visited May 18, 2026); see also id., p. 9.

On August 16, 2022, each plaintiff timely filed in its licensing docket a receipt reflecting its payment of any ACP, as determined in exhibit A "using the most [up-to-date] load data from each [plaintiff's] system based on its ISO-NE load asset number . . . ." The contractual dispute centers on whether the payment of those ACPs pursuant to paragraph 4 of the settlement agreement satisfied the plaintiffs' 2022 RPS obligations in full or in part.

declaratory ruling and instead "relied exclusively on the plain language of the master agreement's pricing provision . . . ." Id., 384–85. We concluded that "the resolution of the [contractual] dispute . . . did not require [PURA] to construe or apply any specific statutory provision"; id., 386; and, therefore, that declaratory relief was not available pursuant to § 4-176 (a). See id., 382, 388, 393.

The same is true here. Indeed, throughout the proceedings below and in their respective briefs to this court, the parties have advanced arguments that rely "exclusively on [the settlement agreement's] plain language" and structure, not on any RPS statute. Id., 385. The plaintiffs, in both the petition for a declaratory ruling that they filed with PURA and their complaint, sought ratification of their interpretation of the plain language of the settlement agreement by requesting confirmation that "each [plaintiff] satisfied any and all 2022 RPS obligations . . . and [that] no further payments or filings [were] required *pursuant to the settlement agreement* . . . ." (Emphasis added.) PURA, in its decision addressing whether the plaintiffs had satisfied their 2022 RPS obligations, relied entirely on a detailed analysis of the language appearing in paragraph 4 of the settlement agreement to support its determination that the ACPs paid thereto did not necessarily discharge the plaintiffs' 2022 RPS obligations in full. Although the plaintiffs and PURA have both referenced similar agreements between private parties and PURA, neither of them has relied on, or even referred to, any RPS statute in any of its various arguments.

Despite the plaintiffs' and PURA's consistent characterization of the dispute as an ordinary question of contract interpretation, the majority concludes that the plaintiffs' request for declaratory relief may be reasonably construed to seek guidance as to the applicability of certain RPS statutes. See part III of the majority

opinion. I do not dispute that, as a general matter, the jurisdictional determination under §4-175 (a) is not limited by the parties' characterization of the relevant issue. However, as explained subsequently in this opinion, I do not see how the application or construction of any of the RPS statutes on which the majority relies—namely, General Statutes §16-245 (k) and §16-245a—is necessary to resolve the contractual dispute. In my view, no guidance from any RPS statute is necessary to the interpretation of the settlement agreement. I therefore disagree with the majority that the plaintiffs' request for declaratory relief can be reasonably construed to fall within the purview of §4-175 (a). See id.

The RPS program applies generally to *all* licensed electric suppliers. See General Statutes §16-245 (g) (4) (RPS compliance is condition of continued licensure). It is therefore indisputable that the plaintiffs, as licensed electric suppliers that provided services during 2022, accrued certain RPS obligations under §16-245a (a) and were subject to PURA's RPS proceeding under §16-245 (k). See footnote 4 of this opinion. The narrow issue presented by the plaintiffs' request for declaratory relief is whether the plaintiffs *discharged* those RPS obligations by paying the ACPs as outlined in the settlement agreement. The resolution of that issue does not necessitate the application or construction of any RPS statute and depends solely on how the plain language of paragraph 4 of the settlement agreement is interpreted. The form of paragraph 4 was not dictated by any RPS statute, and its meaning does not turn on the construction of any statutory term. See, e.g., *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 319 Conn. 384–88. Rather, the meaning of paragraph 4 is a question of pure contractual intent of the parties to a highly negotiated agreement. Contra *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control*, supra, 283 Conn. 685, 687 (jurisdiction under §4-176 (a) existed when meaning of contract was "more a question of legislative intent and public policy than a question of the intent of the parties").

The majority correctly observes that, because § 16-245 (k) provides that PURA "shall require a payment by a licensee that fails to comply with the [RPS]" program in an amount provided in that subsection, the applicability of that statutory provision depends on whether the plaintiffs had discharged their RPS obligations by satisfying the requirements of the settlement agreement. See part III of the majority opinion. However, the relevant inquiry under § 4-175 (a) is whether the application or construction of a statute that is within the agency's jurisdiction is necessary to resolve the contractual dispute. See, e.g., *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 319 Conn. 384–88. Whether § 16-245 (k) applies turns on a prior determination of the intended effect of the ACPs made pursuant to paragraph 4 of the settlement agreement in the first instance. For that reason, it is evident that resolution of the contractual dispute does not require the application of § 16-245 (k).

The majority notes that PURA exercised its statutory authority by applying the settlement agreement in the RPS proceeding conducted pursuant to § 16-245 (k). See part III of the majority opinion. I recognize that it seems paradoxical that, despite its status as a party to the settlement agreement, PURA effectuated its own interpretation of paragraph 4 of that agreement when it determined that the plaintiffs had not complied with their 2022 RPS obligations via the procedures provided therein. However, PURA's status as a party to the settlement agreement is irrelevant for purposes of § 4-175 (a). Indeed, the legislature has expressly equipped PURA with the authority to enter into contracts such as the present one. General Statutes § 16-19jj encourages PURA to enter into settlement agreements. Moreover, for PURA to fulfill its statutory directive under § 16-245 (k) "to determine whether any licensee has failed to comply with the [RPS] during the preceding year" in an RPS proceeding, it needed to determine the extent to which the plaintiffs

satisfied their RPS obligations with the ACPs made under paragraph 4 of the settlement agreement.

The fact that PURA's formation and interpretation of an agreement fall within the exercise of its statutory authority does not necessarily mean that, in resolving a dispute with a regulated entity that has challenged its carrying out of that authority, PURA applies a state statute within the meaning of § 4-175 (a). Our reasoning in *Kleen Energy* is also instructive on this point. See footnote 3 of this opinion. In that case, in addition to the argument, explained previously, that PURA had jurisdiction because several provisions of § 16-243m were potentially relevant to the interpretation of the contract, we rejected the argument that PURA had jurisdiction under § 4-176 (a) for the sole reason that it had previously approved the contract at issue pursuant to the statutory authority granted to it by § 16-243m. See *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 319 Conn. 384–86. In doing so, we distinguished the facts in *Kleen Energy* from those in *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control*, supra, 283 Conn. 684–90. See *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 385–86. In *Wheelabrator Lisbon*, we concluded that the agency had jurisdiction pursuant to § 4-176 (a) to interpret a contract that it had previously approved because its meaning turned on the construction of the terms of a statute that was within the agency's jurisdiction. See *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control*, supra, 686–90. Although PURA had approved the contract at issue in *Kleen Energy*, it did not need to construe § 16-243m or any terms therein to resolve the contractual dispute presented. See *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 385–86. We therefore concluded in *Kleen Energy* that, unlike the agency in *Wheelabrator Lisbon*, PURA did not have jurisdiction to issue declaratory relief as to the applicability of a statute. See id., 382, 385–86, 393. Our analysis in this regard made clear that an agency does not have jurisdiction to

provide declaratory relief resolving a contractual dispute solely because the legislature empowered the agency to approve the contract.

Consistent with our reasoning in *Kleen Energy*, it is irrelevant that PURA formed and interpreted the settlement agreement at issue in the present case pursuant to its statutory authority. Regardless of whether the ACPs described in paragraph 4 of the settlement agreement were intended to extinguish the plaintiffs' RPS obligations, the analysis of that issue is not informed by the statutes that authorize the settlement agreement or require a determination of RPS compliance.

Lastly, I note that, even if the relief requested did require the application or construction of a statute within PURA's jurisdiction, the declaratory relief procedures set forth in §§ 4-175 and 4-176 appear to be inapt vehicles for the plaintiffs to obtain a judicial interpretation of the settlement agreement. To request a declaratory judgment from a trial court under § 4-175 (a), parties must first exhaust their remedies under § 4-176 by requesting that the agency issue a declaratory ruling. See, e.*g.*, *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 477–80, 55 A.3d 251 (2012); see also General Statutes § 4-175 (a). That procedural requirement could have led to undesirable results for the plaintiffs. Specifically, if PURA had opted to issue a declaratory ruling under § 4-176, the plaintiffs would have been foreclosed from bringing this direct action in the trial court under § 4-175 (a) and could have filed only an administrative appeal under General Statutes § 4-183. See, e.*g.*, *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 322–23, 968 A.2d 396 (2009); see also General Statutes § 4-175 (a). In such an administrative appeal, the trial court's review would be constrained to "the record before the agency"; *Sastrom* v. *Psychiatric Security Review Board*, supra, 323; and, although it appears to be an open question as to the deference due in a case in which the agency is a party to a contract and that contract is ambiguous, the trial court could have afforded deference

to PURA regarding any factual findings that PURA made in determining the meaning of the settlement agreement. See, e.*g.*, *Connecticut Light & Power Co.* v. *Public Utilities Regulatory Authority*, 354 Conn. 579, 611–13,    A.3d    (2026); see also, e.*g.*, *Southeastern Connecticut Regional Resources Recovery Authority* v. *Dept. of Public Utility Control*, 244 Conn. 280, 289–91, 709 A.2d 549 (1998). Because PURA is a party to the settlement agreement, deference to the agency would seem unfair to the plaintiffs, as the other parties to the settlement agreement. For that reason, I have serious doubts about whether the legislature could have intended §4-175 as the mechanism for regulated entities, such as the plaintiffs, to seek judicial resolution of certain contractual disputes with the agency.

It is undisputed that the availability of other avenues for judicial review is not a question before this court, and I find little significance in the fact that, as the majority notes, PURA has consistently maintained in its argument to this court that judicial review is not available in these circumstances. See footnote 18 of the majority opinion. Regardless of whether PURA's assertion is accurate, I am confident that this court is not bound by its view.

Any broader considerations regarding the availability of other options for judicial review are not before this court and implicate policy decisions committed to the discretion of the legislature. Indeed, the legislature set forth the statutory authority under which PURA acted and created the Office of the Claims Commissioner as an available mechanism for review of certain breach of contract claims against the state. See General Statutes §4-160 (a) ("[w]henever the Claims Commissioner deems it just and equitable, the Claims Commissioner, the Deputy Claims Commissioner or a special deputy may authorize suit against the state on any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable"); see also General Statutes §4-159. I leave for a case in which an issue like this is presented the

determination of whether a remedy such as this or any other might be available to a plaintiff seeking to vindicate its contractual rights under a settlement agreement. I conclude in the present case only that §4-175 (a) is not an available remedy.

In sum, I conclude that the resolution of the contractual dispute here did not require the application or construction of a specific statutory provision within PURA's jurisdiction, and, thus, the declaratory judgment sought by the plaintiffs fell outside the purview of §4-175 (a). Accordingly, I would affirm the trial court's judgment of dismissal of the plaintiffs' complaint for lack of subject matter jurisdiction.

For the foregoing reasons, I respectfully dissent from part III of the majority opinion.