FLEET NATIONAL BANK, TRUSTEE *v.* ZONING
BOARD OF APPEALS OF THE TOWN OF
WINCHESTER
(AC 18262)

Landau, Spear and Stoughton, Js.

Argued March 15—officially released July 6, 1999

*Kevin F. Nelligan,* for the appellant (defendant).

*Scott A. Bennett,* with whom was *H. James Stedronsky,* for the appellee (substitute plaintiff).

*Opinion*

STOUGHTON, J. The defendant zoning board of appeals of the town of Winchester (board) appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Fleet National Bank (Fleet Bank), as trustee for the estate of Cameron A. Reaud, from the board's decision denying Fleet Bank's application to modify a previously granted variance.[1] Fleet Bank's application sought to remove conditions that had been attached to the variance by the board. The board claims on appeal that the trial court improperly (1) concluded that the standard a zoning board should apply in determining whether to grant an application to modify a variance by removing the attached conditions is whether there is a material change in circumstances and not the land use hardship standard applicable to variance requests, (2) concluded that the super-majority requirement of General Statutes § 8-7 does not apply to an application to modify a variance by removing the attached conditions and (3) failed to search the record to find whether the board's decision was supportable under either standard. We reverse the judgment of the trial court.

The record reveals the following relevant facts. The parcel of property that is the subject of this appeal is owned by the estate of Cameron A. Reaud and held in trust by Fleet National Bank, as trustee, for the benefit of the Episcopal Church. The subject parcel is located at 500 East Wakefield Boulevard in Winsted. The property consists of 12,830 square feet, .295 acres, and is located in the Highland Lake District. The parcel is bordered to the north and south by year-round residences and

---

[1] On October 6, 1998, James H. Gould III was substituted as plaintiff in this case.

to the east and west by Highland Lake and East Highland Boulevard, respectively. The parcel has 82.29 feet of frontage on East Highland Boulevard, over 175 feet bordering on adjacent properties and narrows to 62.27 feet at the rear of the property, which abuts Highland Lake. The Highland Lake zoning regulations require a thirty-five foot side yard setback.

On November 23, 1993,[2] the board granted Fleet Bank a variance with respect to the thirty-five foot minimum side yard setback requirement. The variance permitted reductions of nine and one-half feet and twelve feet in the minimum setback requirements on the north and south sides of the parcel, respectively. In granting the variance, however, the board imposed conditions limiting the building of any structure on the property to a seasonal cottage of not more than 640 square feet.[3]

Fleet Bank attempted to sell the property to distribute the proceeds of the sale to the beneficiary of the trust, but claimed that it was unable to do so for a satisfactory price because of the attached conditions.[4] On February 21, 1997, Fleet Bank filed an application for a modification of the variance, seeking to remove the conditions from the variance.

After two properly noticed public hearings on March 25 and April 22, 1997, the board voted three to two in favor of a motion to retain the previously granted side yard setback reductions but to remove the size and use

---

[2] We note that the briefs submitted by the parties and the trial court's memorandum of decision indicate that the variance was granted on January 23, 1993. Our review of the record reveals, however, that the board's notification of decision states that the variance was granted to Fleet Bank on November 23, 1993.

[3] Pursuant to § 1.6a of Winchester's town zoning regulations, a seasonal cottage is one that has a minimum size of 500 square feet and may not be occupied for more than thirty days between October 15 and May 1 in any given year.

[4] On August 27, 1998, James H. Gould III purchased the property for $57,500.

conditions from the variance. The motion was unsuccessful, however, because the three to two vote did not satisfy the requirements of § 8-7.[5] The board cited "no land use hardship" as the reason for denying Fleet Bank's motion.[6]

Fleet Bank successfully appealed to the trial court from the denial of its application to the board. Fleet Bank claimed, and the court agreed, that a material change in circumstances had arisen since the board originally imposed the conditions because all of the properties on East Wakefield Boulevard were, at the time of Fleet Bank's new application, required to connect with the municipal sewer system. Fleet Bank argued that there was no longer a need to distinguish between the seasonal and year-round dwellings with respect to their environmental impacts on Highland Lake.

The trial court reversed the board's decision, concluding that the board had improperly required Fleet Bank to demonstrate a land use hardship to secure

---

[5] General Statutes § 8-7 provides in relevant part: "The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations or to decide in favor of the applicant any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning bylaw, ordinance, rule or regulation. . . ."

[6] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. . . ."

removal of the variance conditions and that only a simple majority vote was needed to approve Fleet Bank's application. The trial court further concluded that the correct standard governing applications to modify a variance by removing an attached condition is whether a material change in circumstances exists, rather than the existence of a land use hardship.

In reaching its conclusion concerning the inapplicability of § 8-7 to this case, the trial court reasoned that because § 8-7 does not specifically cite applications to remove conditions attached to variances, the board abused its discretion in denying the application, which would have otherwise passed by a simple majority. The trial court relied on *Caseria* v. *Zoning Board of Appeals*, Superior Court, judicial district of Fairfield, Docket No. 312301 (June 12, 1995) (14 Conn. L. Rptr. 407), in concluding that the correct standard of review to be applied to an application to modify a variance by removing attached conditions was whether there has been a material change in circumstances that has made the condition unreasonable. The trial court finally concluded that the board's failure to employ the correct legal standard in denying Fleet Bank's application to modify the variance warranted reversal. This appeal followed.

As a threshold matter, we note that "[l]ocal zoning boards are vested with a liberal discretion. . . . A trial court must, however, review the decision of a zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably." (Citation omitted.) *Wnuk* v. *Zoning Board of Appeals*, 225 Conn. 691, 695–96, 626 A.2d 698 (1993). Additionally, our review of conclusions of law is plenary and we must decide whether the conclusions are legally and logically correct and supported by the facts in the record. *State* v. *Velasco*, 248 Conn. 183, 189, 728 A.2d 493 (1999).

The board claims that the trial court improperly concluded that the standard of review applicable to an

application to modify a variance by removing attached conditions is a material change in circumstances rather than the land use hardship standard applicable to variance requests. We agree.

Our Supreme Court has interpreted General Statutes § 8-6 "to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 368, 537 A.2d 1030 (1988); *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 326, 387 A.2d 542 (1978)." (Internal quotation marks omitted.) *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 207, 658 A.2d 559 (1995). Additionally, zoning boards of appeals may grant variances subject to reasonable conditions. *Burlington* v. *Jencik*, 168 Conn. 506, 509, 362 A.2d 1338 (1975). Such conditions are "inextricably linked, the viability of the variance being contingent upon the satisfaction of the conditions." Id., 510.

Fleet Bank does not claim unusual or undue hardship. It merely claims that the circumstances have changed so that the conditions are now unreasonable and that they were not an integral part of the zoning authority's decision to grant the variance. Fleet Bank claimed, and the trial court agreed, that the conditions were imposed in order to limit further contamination of Highland Lake by year round use of septic systems. That assertion, however, is speculation because our review of the record reveals that the record does not contain a transcription of the minutes of the agency's meeting when the original application for a variance was considered and granted with conditions. The record does, however, contain the minutes of the meetings at which the request for removal of the conditions was considered. Those

minutes indicate that when the variance was granted, the board wanted to allow Fleet Bank to have some use of the property. The board, however, decided to limit the use and size of any structure that could be built on the property to a seasonal cottage of no more than 640 square feet because the long, narrow shape of property meant that any structure would have close proximity to the abutting properties. The conditions were thus an integral part of the board's decision to grant the variance and, therefore, inextricably linked to the variance. The minutes also indicate that it was known at the time the variance was granted in 1993 that sewers were being constructed in the area. Thus, the record does not establish that the conditions were imposed because there was no sewer system.

We conclude that the viability of the 1993 variance that the board granted to Fleet Bank was dependent on the conditions imposed and that any application to remove the conditions so affected the variance as to require a showing of hardship. Pursuant to *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 207, the land use hardship standard was properly applied by the board in rejecting Fleet Bank's application to modify the variance by removing the attached conditions.

Because the board properly applied the land use hardship standard, pursuant to § 8-7, four votes were necessary to approve the application.[7] The board's rejection of the application for failure to secure four votes was not arbitrary, illegal or unreasonable.[8]

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's appeal.

In this opinion the other judges concurred.

---

[7] See footnote 5.

[8] Our resolution of the board's first two claims renders unnecessary any discussion of its third claim.