ELIZABETH GOULET ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF CHESHIRE
(AC 29524)

DiPentima, Robinson and West, Js.

---

334

Argued April 22—officially released September 29, 2009

*Michael Broderick III*, for the appellants (plaintiffs).

*Brian A. Lema*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiffs, Elizabeth Goulet and Mark Goulet, appeal from the judgment of the trial court affirming the decision of the defendant, the zoning board of appeals of the town of Cheshire, affirming the decision of Lisa Murphy, the town zoning enforcement officer,[1] to deny the plaintiffs' application for a zoning permit to build a single-family residence. On appeal, the plaintiffs argue that the court improperly determined that (1) two parcels merged by operation of § 24.8 of the Cheshire zoning regulations and (2) the board did not arbitrarily interpret § 24.8. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts are relevant to our discussion. On April 8, 1970, the town of Cheshire (town) adopted zoning regulations. In 1972, Elizabeth Goulet acquired title to property known as lot 19 in Cheshire. At all relevant times, a single-family home has been located on lot 19. Five years later, she obtained title to a contiguous parcel of unimproved land known as lot 18. Lots 18 and 19 are located in an R-20 zoning district. Neither lot 18 nor lot 19 meets the minimum dimensional requirements[2] of the zoning regulations for an R-20 zone.[3] Eliza-

---

[1] "Pursuant to General Statutes § 8-12 . . . the zoning enforcement officer . . . is vested with the power to enforce the city's zoning code. See *Enfield* v. *Enfield Shade Tobacco, LLC*, 265 Conn. 376, 378, 828 A.2d 596 (2003)." *Driska* v. *Pierce*, 110 Conn. App. 727, 728 n.2, 955 A.2d 1235 (2008).

[2] Accordingly, these are nonconforming lots, which we have defined as a lot that "is undersized, irregularly shaped, has inadequate width or depth or inadequate frontage . . . ." (Internal quotation marks omitted.) *Munroe* v. *Zoning Board of Appeals*, 75 Conn. App. 796, 806, 818 A.2d 72 (2003), quoting R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 52.1, p. 548.

[3] Pursuant to the Cheshire zoning regulations, the minimum lot area in the R-20 zone is 20,000 square feet with a minimum lot width of 100 feet

beth Goulet owned both lots from 1977 until the conveyance of lot 19 to a third party on July 12, 2002.

On or about July 14, 2005, the plaintiffs filed an application for a building permit to construct a single-family residence on lot 18. By letter dated August 24, 2005, Murphy denied the application for lack of zoning certification. The plaintiffs filed an appeal to the board, which held a hearing. On December 5, 2005, following a 3-2 vote in favor of the plaintiffs, the appeal was denied because it failed to meet the statutory requirement of four concurring votes necessary to sustain the appeal.[4]

On December 27, 2005, the plaintiffs filed an appeal to the Superior Court from the board's decision. The court issued a memorandum of decision denying the appeal on December 19, 2006. Specifically, the court concluded that the lots 18 and 19 were in common ownership during the time of certain amendments to the town's zoning regulations and, therefore, merged by operation of § 24.8 of the Cheshire zoning regulations. It then determined that the denial of a building permit for lot 18 was not arbitrary, unreasonable or contrary to law. Consequently, it affirmed the decision of the board. This appeal followed.

I

The plaintiffs first claim the court improperly determined that the two parcels, lots 18 and 19, merged by operation of § 24.8 of the town's zoning regulations. Specifically, they argue that "the plain language of [§]

and minimum lot frontage of 50 feet. Lot 18 measures only 6250 square feet. Lot 19 measures approximately 9000 square feet.

[4] General Statutes § 8-7 provides in relevant part: "The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations or to decide in favor of the applicant any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning bylaw, ordinance, rule or regulation. . . ."

24.8 requires an interpretation that the lot merger provision is applicable to ownership at the time of the passage of [§] 24.8 or to ownership at the time of an amendment affecting the nonconformity of the lots as to area or width." The plaintiffs further contend that the court's interpretation is contrary to common sense and the plain meaning of the regulation and results in an absurd result. We are not persuaded.

As a preliminary matter, we set forth the relevant legal principles and standard of review that guide our resolution of this appeal. Our Supreme Court has stated that "[u]nder our well established standard of review, [w]e have recognized that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that . . . deference . . . to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals,* 289 Conn. 709, 714–15, 960 A.2d 1018 (2008); *Borrelli* v. *Zoning Board of Appeals,* 106 Conn. App. 266, 270, 941 A.2d 966 (2008); *Munroe* v. *Zoning Board of Appeals,* 75 Conn. App. 796, 803, 818 A.2d 72 (2003) ("[i]t is our job, as an appellate court, to construe the relevant zoning regulation because . . . the outcome . . . eventually will depend on a legal interpretation of the regulation by an appellate court").

Section 24.8 of the town's zoning regulations has not been subjected previously to judicial scrutiny. Moreover, the board did not indicate that it had applied a time

tested interpretation of this regulation. Accordingly, we do not defer to the board's construction but exercise plenary review in accordance with our well established rules of statutory construction. See *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 663, 916 A.2d 803 (2007).

"[Z]oning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Furthermore, General Statutes § 1-1 (a) provides: In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." (Citations omitted; internal quotation marks omitted.) *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 20–21, 966 A.2d 722 (2009); *Driska* v. *Pierce*, 110 Conn. App. 727, 731–32, 955 A.2d 1235 (2008).

We begin with the text of the regulation at issue. Section 24.8 of the town's zoning regulations provides in relevant part: "If two or more lots or combinations of lots and portions of lots with continuous frontage in single ownership are of record *at the time of passage or amendment of these regulations,* and if all or part

of the lots do not meet the requirements established for lot width and area, the lands involved shall be considered to be an undivided lot for the purposes of these Regulations . . . ." (Emphasis added.) The interpretation of the emphasized language is at issue in the present case.

It is undisputed that the plaintiffs did not own the two contiguous lots at the time of passage of the town's zoning regulations. The board and the court determined that the phrase "these regulations" means that amendments to regulations in addition to § 24-8 trigger the merger provision. The plaintiffs argue that such an interpretation yields an unreasonable and irrational result. We disagree with the plaintiffs.

Before addressing the specific claim before us, it is helpful to set forth background information on the issue of merger. "Contiguous land owned by the same person does not necessarily constitute a single lot." *Bell* v. *Zoning Board of Appeals*, 27 Conn. App. 41, 46, 604 A.2d 379 (1992); see also *Carbone* v. *Vigliotti*, 222 Conn. 216, 227, 610 A.2d 565 (1992). Merger may occur if the owner of contiguous lots intends to form one tract; *Iannucci* v. *Zoning Board of Appeals*, 25 Conn. App. 85, 89, 592 A.2d 970 (1991);[5] or by operation of law. *Marino* v. *Zoning Board of Appeals*, 22 Conn. App. 606, 607 n.1, 578 A.2d 165, cert. denied, 216 Conn. 817, 580 A.2d 58 (1990); see also R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 53:6, p. 246. "The one occasion this court has found where merger may occur by operation of law is that found in some zoning regulations that may require, either expressly or implicitly, that under certain conditions a nonconforming lot merges with contiguous land owned by the same owner. See *Neumann* v. *Zoning*

---

[5] The court declined to address the issue of "common-law merger," and we refuse the board's invitation to reach the issue for the first time on appeal.

*Board of Appeals*, 14 Conn. App. 55, 60, 539 A.2d 614, cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988); *Torsiello* v. *Zoning Board of Appeals*, [3 Conn. App. 47, 48 n.2, 484 A.2d 483 (1984)]; but see *Schultz* v. *Zoning Board of Appeals*, [144 Conn. 332, 338, 130 A.2d 789 (1957)]." *Bell* v. *Zoning Board of Appeals*, supra, 46–47. Whether a zoning regulation requires two commonly owned and adjacent lots to be merged is ascertained by examining the regulation itself. Id., 47.

The record reveals two instances in which the town amended the regulations during a time period when Elizabeth Goulet owned lots 18 and 19.[6] First, in July, 1979, the town amended the zoning map, which caused lots 18 and 19 to be rezoned from an industrial zone (I-2) to a residential zone (R-20).[7] The town's zoning regulations expressly state that the zoning maps "and any amendments thereto are hereby made a part of these [r]egulations." Cheshire Zoning Regs., § 22.1.[8]

---

[6] In their reply brief, the plaintiffs argued that the court's interpretation of § 24.8 results in the merger provision being effectuated by any amendment to any of the town's zoning regulations. They further advance that a bizarre result would ensue because residential property would merge, for example, when an adult entertainment regulation had been amended. We simply note that, under the facts and circumstance of this case, we need not decide the merits of this argument.

[7] The property was less nonconforming following the zone change from I-2 to R-20. The I-2 zone requires a minimum square lot of 120,000 feet.

[8] In their reply brief, the plaintiffs argued that § 70 of the town's zoning regulations distinguishes between amendments to the regulations and amendments to the zoning map. This argument was premised on the current version of § 70. Following oral argument before this court, we granted permission for the plaintiffs' counsel to supplement the appendix with a copy of § 70 as it existed in 1979. That regulation states: "These Regulations and the Official Zoning Map may be amended by the Planning and Zoning Commission on its own initiative or when initiated by a petition. Any amendment may be adopted only after due notice and public hearing as prescribed by the *Connecticut General Statutes*. All petitions for amendment shall be submitted in writing at a regular meeting for the Planning and Zoning Commission on forms prescribed by the Commission and shall be accompanied by [(1) a map and (2) a check for $25]." (Emphasis in original.) Cheshire Zoning Regs., § 70.

It is clear that in 1979, the year the plaintiffs' property was rezoned from I-2 to R-20, § 70 did not distinguish between amendments to the regulations

David Velber, a member of the board who voted against the plaintiffs' application, stated that the rezoning from I-2 to R-20 triggered the merger provision. The second instance occurred in 1997, when the town amended § 24 of the regulations.

We conclude that either of these instances is sufficient to trigger the merger provision contained in § 24.8. First, we note that the language of the regulation states "amendment of these regulations . . . ." Id., § 24.8. The drafters, by the use of the plural, "these regulations," suggest that there was no intent to limit the amendment requirement solely to § 24.8. See, e.g., *Shawhan* v. *Langley*, 249 Conn. 339, 344, 732 A.2d 170 (1999). Additionally, by not limiting the merger provision to amendments only of § 24.8, the reduction of nonconforming lots is advanced. We are mindful that this type of reduction is a recognized goal of zoning and a valid purpose of merger regulations. *Molic* v. *Zoning Board of Appeals*, 18 Conn. App. 159, 164, 556 A.2d 1049 (1989); *Neumann* v. *Zoning Board of Appeals*, supra, 14 Conn. App. 62 (general goal of zoning is to reduce nonconformity "with all the speed justice will tolerate" [internal quotation marks omitted]). The court's conclusion regarding the interpretation of § 24.8 was legally and logically correct and supported by the facts in the record. Moreover, we reject the plaintiffs' claim that such an interpretation is contrary to common sense and the plain meaning of the regulation and results in an absurd result.[9]

and amendments to the zoning map. We take this opportunity, however, to commend counsel for adhering to the duty of candor to this court. See Rules of Professional Conduct 3.3.

[9] The plaintiffs argued before the trial court that one of the members of the board, Joseph Bartoli, used the term "hardship" in voting against the appeal and that this may have indicated that he was using an inapplicable standard. Although this fact was mentioned briefly in the plaintiffs' appellate brief, this separate claim was not raised on appeal.

## II

The plaintiffs next claim that the court improperly determined that the board did not arbitrarily apply § 24.8. Specifically, they argue that the denial for a zoning permit for lot 18 was inconsistent with the prior decision to grant a zoning permit for a similarly situated property known as lot 17. We are not persuaded.

The following additional facts are necessary for our discussion. In the mid-1990s, the town approved a building permit for lot 17, which is contiguous with lot 18. Lot 17 is similar in size to lot 18. In its December 19, 2006 memorandum of decision, the court described lot 17 as "individually owned at all times relevant to this appeal." On January 5, 2007, the plaintiffs filed a motion to open the judgment on the ground that the court incorrectly described the factual situation regarding ownership of lot 17. On October 30, 2007, the court granted this motion. On the same date, the court issued a second memorandum of decision.

The court explained that lot 17 was in common ownership with lot 16 and, therefore, had been subject to the merger provision of § 24.8. The plaintiffs had argued that the granting of the building permit for lot 17 was an example of the prior and, in their view, proper application of § 24.8, and, therefore, the board's denial of their application constituted an illegal, arbitrary decision and an abuse of discretion. The court referred to the testimony of a member of the board who described the decision to grant the building permit for lot 17 as " 'a mistake.' " The court concluded that the board properly had interpreted and applied § 24.8, despite the earlier decision with respect to lots 16 and 17. It further observed that there had been no showing of discrimination against the plaintiffs and noted that the doctrine of municipal estoppel[10] did not apply.

---

[10] In its brief, the board characterized the plaintiffs argument with respect to this claim as one of municipal estoppel. In their reply brief, the plaintiffs disputed this characterization and contended that this doctrine "has no

We begin by setting forth the applicable standard of review. "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court ha[s] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) *Martland* v. *Zoning Commission*, 114 Conn. App. 655, 662, 971 A.2d 53 (2009).

On appeal, the plaintiffs argue that because they were entitled to a consistent interpretation of § 24.8, the denial of the building permit was unreasonable.[11] The flaw in this argument is that the plaintiffs have failed to show that the town consistently applied § 24.8 contrary to its actions in the present case. They direct our attention to a solitary instance, the case of lots 16 and 17, in which the town issued a building permit and did not consider the properties merged. We note that the

relevance to the facts of the . . . case." The trial court did not address the applicability of municipal estoppel, and we likewise follow this course of action.

[11] The plaintiffs also argue that all of the lots in the subdivision where lot 18 is contained are nonconforming by the nature of the size difference in the lots and the minimum lot size imposed by the zoning regulations. They contend, therefore, that our decision in *Laurel Beach Assn.* v. *Zoning Board of Appeals*, 66 Conn. App. 640, 657, 785 A.2d 1169 (2001), results in the board's interpretation of § 24.8 being unreasonable. We do not consider this argument because it is raised for the first time on appeal. Aside from a subdivision map showing the relative size of the lots in acres, there is no indication that either the board or the trial court heard any evidence pertaining to any lots except those already discussed. See *Driska* v. *Pierce*, supra, 110 Conn. App. 734 n.11.

zoning enforcement officer stated that she was unaware of that situation and that even if it presented exactly the same facts, the decision to grant the permit for lot 17 was a mistake. We decline to require that a zoning board of appeals be bound by an earlier mistaken approval with respect to a different property in the absence of other circumstances. *State ex rel. La Voie* v. *Building Commission*, 135 Conn. 415, 420, 65 A.2d 165 (1949); see also *Treat* v. *Town Plan & Zoning Commission*, 145 Conn. 406, 408–409, 143 A.2d 448 (1958); *Fisette* v. *DiPietro*, 28 Conn. App. 379, 386, 611 A.2d 417 (1992) ("[a] zoning body does not forever surrender the right to enforce its regulations because it finds that enforcement is not required at an earlier time"). Given the facts and circumstances of the present case, we conclude that the board's decision was reasonable and was not an inconsistent interpretation that would require reversal.

The judgment is affirmed.

In this opinion the other judges concurred.