# VICTOR ANATRA ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF MADISON
## (AC 31499)

Gruendel, Lavine and Bear, Js.

Argued September 17, 2010—officially released March 8, 2011

*Benson A. Snaider*, with whom was *Glenn E. Coe*, for the appellants (plaintiffs).

*Michael A. Zizka*, with whom, on the brief, was *Loni S. Gardner*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiffs, Victor Anatra and Heather Anatra, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the zoning board of appeals (board) of the town of Madison (town). The board had upheld the decision of the town's zoning enforcement officer (zoning officer), denying the plaintiffs' application for a certificate of zoning compliance, which was necessary to secure a building permit to construct an uncovered deck on

their property located at 71 Oak Avenue in Madison. On appeal, the plaintiffs claim that the court improperly dismissed their appeal after concluding that they were not entitled to the certificate of zoning compliance because they needed a variance modification to build the deck. We reverse the judgment of the trial court.

The court found the following facts, which are uncontested and relevant to our discussion of the plaintiffs' appeal. "On October 5, 2001, the [plaintiffs] applied for a variance to the [board] to replace the then-existing house on the footprint of that prior structure. The prior structure was a much aged cottage. The proposed structure was a modern, multistory home. The [plaintiffs'] application requested variances for front yard and side yard setbacks, additional maximum building coverage, and [c]ritical [c]oastal [r]esource setback. Detailed plans were submitted with the application. The application stipulated, immediately above the signature line, that *'THE PLANS SUBMITTED WITH THE BUILDING APPLICATION MUST BE THE SAME AS THOSE SUBMITTED AND APPROVED WITH YOUR VARIANCE APPLICATION.'* (Emphasis in original.)

"On January 4, 2002, the [board] considered the application. The [plaintiffs'] architect, Robert Mangino, presented a floor plan and a model of the proposed house to the [board]. The minutes of the meeting state that Mangino 'referred to the model and said the house will not change from the model, although there may be a change in the windows.' Neither the application nor the model included a deck extending beyond the footprint of the house. The [board] approved the application. The [plaintiffs] subsequently built a new structure, conforming with the submitted plans and model, on the site.

"On July 27, 2006, [t]he [plaintiffs] filed an application for 'variance modification' to 'add [nine feet] to existing balcony in rear of house—[nine feet by twenty feet].'

The existing balcony—which appears to be within the footprint of the existing structure—was stated to be '[three feet by twenty-two feet].' The proposed addition extended beyond that footprint. On September 5, 2006, the [board] denied the application. The [plaintiffs] did not appeal [that] decision.

"On December 19, 2007, the [plaintiffs] decided to try again. This time, instead of requesting another 'variance modification,' they submitted an application for a building permit to the [zoning officer]. A drawing attached to the application shows a 'proposed deck' [thirty-two] feet long and [seven] feet wide for [twenty] feet of the total length, expanding to [ten] feet wide in the last [twelve] feet of length. A 'privacy wall' was to be built at the narrow end of the deck. The 'proposed deck' and 'privacy wall' extend beyond the footprint of the existing structure.

"On January 3, 2008, the [zoning officer] denied the application. His denial states that, '[p]rior variances for this building were granted by the [board] based on specific plans and representations for the building. The variances are effective for that building only. Any modification to the building must be approved by the [board].'

"On January 11, 2008, the [plaintiffs] appealed the decision of the [zoning officer] to the [board]. The appeal describes the [plaintiffs'] application as one 'for zoning approval for building permit to construct extension to existing balcony in the rear of home. Proposed extension is an uncovered deck in accordance with [Madison Zoning Regs. §] 19.5.1, [seven feet] wide for [twenty feet] then [ten feet] wide for [twelve feet], set entirely within the side and rear yard setbacks.' On March 4, 2008, the [board] voted to uphold the decision of the [zoning officer]. On March 25, 2008 the [plaintiffs] commenced [an] appeal to the Superior Court . . . .

The appeal [to the Superior Court] was heard on May 12, 2009."

Following the May 12, 2009 hearing, the court dismissed the plaintiffs' appeal, concluding that the board had acted properly in upholding the decision of the zoning officer, which denied to the plaintiffs a certificate of zoning compliance to enable them to secure a building permit to construct the proposed uncovered deck. This appeal followed.[1]

On appeal, the plaintiffs claim that the court improperly dismissed their appeal, thereby affirming the board's decision to uphold the zoning officer's decision not to issue a certificate of zoning compliance on the ground that the plaintiffs needed to modify their variance to build an uncovered deck on their property. Specifically, the plaintiffs argue that the proposed uncovered deck fully complies with the zoning regulations and that it does not intrude into any setback area. They further argue that the proposed uncovered deck does not increase the coverage area of their building because an uncovered deck specifically is excluded from the calculation of building coverage area pursuant to § 19.5.1 of the Madison zoning regulations. We agree.

As a preliminary matter, we set forth the relevant legal principles and our standard of review, which guide us in our resolution of the plaintiffs' appeal. "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the

---

[1] Following oral argument in this case, we ordered supplemental briefs from the parties, addressing the relevance, if any, of § 12 of the Madison zoning regulations concerning nonconforming buildings and uses, *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 966 A.2d 722 (2009), and *Fleet National Bank* v. *Zoning Board of Appeals*, 54 Conn. App. 135, 734 A.2d 592, cert. denied, 250 Conn. 930, 738 A.2d 656 (1999). We agree with the board that the cases and § 12 of the regulations are not relevant substantively to the case at bar because the plaintiffs' property is now subject to two variances.

exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court ha[s] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) *Goulet* v. *Zoning Board of Appeals*, 117 Conn. App. 333, 343, 978 A.2d 1160, cert. denied, 294 Conn. 909, 982 A.2d 1082 (2009). Our Supreme Court has explained that "[a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 715, 960 A.2d 1018 (2008).

The plaintiffs argue that the proposed uncovered deck fully complies with the town's zoning regulations, that it does not intrude into any setback area and that it does not increase the coverage area of their building. They explain that pursuant to § 19.5.1, the proposed uncovered deck specifically is excluded when calculating building coverage area under the zoning regulations and, therefore, that they should have been given their certificate of zoning compliance.[2] They also argue that

[2] Section 19.5 of the regulations provides: "BUILDING AREA: The ground area covered by all buildings, including chimneys, together with the area of all covered porches and other roofed portions (excluding the two feet allowed in Section 2.8 of these regulations, and decks without roofs, and trellises)."

Section 19.5.1 of the regulations provides: "BUILDING COVERAGE: The building area not to include uncovered decks, swimming pools, tennis courts,

the board did not have the authority to "monitor and approve modifications to the structure [that] did not affect aspects of the structure for which variances had been granted." The defendant does not contest that the plaintiffs' proposed deck would comply fully with the regulations. The defendant argues, however, that "the plaintiffs were bound by their variance application representations and plans and the conditions of approval contained in the 2001 certificate of variance." We conclude that the plaintiffs did not need a new or modified variance to build their proposed deck, which fully complied with the zoning regulations and was not prohibited by any condition attached to the certificates of variances previously granted.

The following additional facts are relevant to our discussion. The plaintiffs applied to the board for a variance to enable them to tear down and to reconstruct their nonconforming cottage. The cottage, which had existed before the zoning regulations were enacted, was located on an undersized lot, and it did not conform to side yard or front yard setbacks, nor did it meet the regulations regarding maximum permissible area coverage. The board granted the plaintiffs' application and issued a certificate of variance on December 4, 2001. The certificate of variance stated in relevant part that it "certifie[d] that on [December 4, 2001] a variance was granted to [the plaintiffs] . . . by the [board] to vary the application of [§§] 2.1.7 and 3.6 (d & f) of the [z]oning [r]egulations . . . ." The certificate also set forth the exact nature of the variance granted: "To allow 10.9% area coverage, 35.1 ft. front yard and 10.5 ft. side yard variances to permit existing structure to be replaced in the same location within 50 ft. of the critical coastal resources as presented at the hearing and as shown on the plans and the survey submitted. The [c]oastal [s]ite

trellises, or projections outlined in Section 2.8, 2.8.1 and 2.8.3, divided by the area of the lot."

[p]lan [r]eview was approved with the following condition: [1] that all construction be in conformance with the construction standards put forth by FEMA [the Federal Emergency Management Agency]; and [2] that the proposed harvesting and replanting of beach grass be scheduled for early spring to ensure the shortest period of plant storage and the best possible conditions for the re-establishment of the beach grass; careful watering of the replanted grass through the first growing season (typically from early spring through October) is recommended to aid its successful re-establishment within the disturbed area." The certificate also contained a preprinted standard clause at the bottom of the page that provides: "This variance shall not become effective until a copy of this [c]ertificate of [v]ariance, certified by the [z]oning [b]oard of [a]ppeals, is recorded in the land records of the [t]own of Madison at the expense of the record owner."

On September 2, 2003, the plaintiffs were issued another certificate of variance to enable them to install new stairs and an air conditioning unit on the outside of their new home. This certificate provides: "This certifies that on [September 2, 2003] a variance was granted to Victor Anatra . . . by the [board] to vary the application of [§§] 2.1.7, 3.6 (d & f) and 12.6 of the [z]oning [r]egulations . . . ." The certificate also set forth the exact nature of the variance granted: "To allow an increase in coverage from 10.9% to 11.1% and side variances of 19.5 ft. to new west side stairs, 16 ft. to air conditioning unit on west side and 2 ft. to new deck on the south side and front yard variances of 27 ft. to new stairway on the east side, 21 ft. to new deck on the east side and 36 ft. to new stairway on the west side and to allow the generator and air conditioning units in the critical coastal resource area as presented at the hearing subject to the condition that the air conditioning units be 18 SEER [seasonal energy efficiency

ratio] or better." The certificate also contained the same preprinted standard clause at the bottom of the page, providing: "This variance shall not become effective until a copy of this [c]ertificate of [v]ariance, certified by the [z]oning [b]oard of [a]ppeals, is recorded in the land records of the [t]own of Madison at the expense of the record owner."

General Statutes § 8-3d provides in relevant part: "No variance . . . granted pursuant to this chapter, chapter 126 or any special act . . . shall be effective until a copy thereof, certified by a . . . zoning board of appeals, containing a description of the premises to which it relates and specifying the nature of such variance . . . including the zoning bylaw, ordinance or regulation which is varied in its application . . . and stating the name of the owner of record, is recorded in the land records of the town in which such premises are located. The town clerk shall index the same in the grantor's index under the name of the then record owner and the record owner shall pay for such recording."

Clearly, under our law, the board had the authority to attach reasonable conditions to the certificates of variance issued to the plaintiffs. See *Burlington* v. *Jencik*, 168 Conn. 506, 509, 362 A.2d 1338 (1975); see also *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 161, 763 A.2d 1011 (2001) (*Sullivan, J.*, dissenting). "The right to attach reasonable conditions to the grant of a variance is not dependent upon express authorization from the lawmaking body. . . . Were this not so, the board, for lack of such right, might be forced, at times, to deny a variance and thus to perpetuate an owner's plight crying for relief. Since variances allow uses forbidden by the regulations, the attachment of conditions to the granting of a variance alleviates the harm which might otherwise result. . . . Were it not for the conditions imposed by a board of appeals, variances might

not be supportable as being in harmony with the general purpose and intent of the zoning ordinance. . . . Thus the variance and the attached conditions are inextricably linked, the viability of the variance being contingent upon the satisfaction of the conditions." (Citations omitted; internal quotation marks omitted.) *Burlington* v. *Jencik,* supra, 509–10. "The zoning board of appeals [however] cannot require as a condition of a variance that the applicant obtain a permit which the regulations specifically do not require under the circumstances. Nor can a variance condition violate a statutory allocation of power to make certain decisions." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 142–43.

"[Our] Supreme Court has said that one way of bridging the apparent conflict between the obligation of a variance to be in harmony with the comprehensive plan even while permitting an exception to its provisions, is to attach conditions to the variance. Hence despite the lack of specific statutory authority to do so, the zoning board of appeals is free to attach conditions to variances it grants—and it may even be required to do so by the 'harmony' phrase in the statute. Conditions that are impossible to satisfy 'are patently unreasonable,' however, and will be voided on appeal." Id., p. 142.

In the present case, the language contained in the first certificate of variance issued to the plaintiffs clearly expresses the explicit conditions attached to that variance: "that all construction be in conformance with the construction standards put forth by FEMA; and . . . that the proposed harvesting and replanting of beach grass be scheduled for early spring . . . ." The explicit condition attached to the second variance mandated that the "air conditioning units be 18 SEER or better." The actual certificates, which were issued to the plaintiffs and recorded in the town's land records, contained no other conditions.

A primary purpose for requiring certificates of variance to be recorded in the land records is because a variance runs with the land and is not specific to the individual applying for it. General Statutes § 8-6 (b); *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 859, 670 A.2d 1271 (1996); *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 167–68, 855 A.2d 1044 (2004). "Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance." General Statutes § 8-6 (b). "Conditions may be imposed relative to the proposed use of the property, to the duration of the variance, or both. . . . Essentially, the conditions must relate to the amelioration of any adverse impacts of the land use. The board is without authority to impose conditions that are not rationally related to minimizing the adverse impacts of granting a variance. The board must clearly state any conditions in its decision so that all interested parties are fully aware of the nature and extent of the conditions." 2 P. Salkin, American Law of Zoning (5th Ed. 2010) § 13:36, pp. 13-103 through 13-104.

"Conditions imposed by a zoning board of appeals must be expressed with sufficient clarity to inform the applicant of the limitations upon the use of the land, and to protect nearby owners. Thus, conditions have been held to be ineffectively expressed where they limited use in terms of the applicant's verbal statements to the board. Conditions that are too vague, or not clearly articulated are found to be void. To be enforceable, conditions must be expressed in sufficiently definite terms to enable the permit holder, adjacent

landowners, and all interested parties to know what is required of the permit holder." Id., § 13:37, pp. 13-104 through 13-105.

"A condition may not be imposed merely because it is believed to be beneficial to the community when the condition does not relate to the parcel or land, or the specific portion of land [for which] the variance is requested." Id., § 13:39, p. 13-109 n.6, citing *Russell* v. *Smokerise Bath & Racquet Club, Inc.*, 243 Ga. 724, 256 S.E.2d 457 (1979) (holding that lighting condition for tennis court variance could not be extended to original tennis courts that were not subject of variance application).

Our decision further is guided by *Dodson Boatyard, LLC* v. *Planning & Zoning Commission*, 77 Conn. App. 334, 823 A.2d 371, cert. denied, 265 Conn. 908, 831 A.2d 248 (2003). In *Dodson Boatyard, LLC*, the defendant planning and zoning commission (commission) had appealed to this court from the judgment of the trial court sustaining the plaintiff's appeal from the commission's denial of the plaintiff's application to modify a special use permit to reduce the rear yard setback from fifty feet to eight feet to allow the plaintiff to install storage sheds in the rear yard of a marina. Id., 337. On appeal, the trial court had concluded that a modification of the special use permit was unnecessary because the plaintiff's predecessor in title had obtained a variance for the property in 1983 that had reduced the rear yard setback line to six feet; id., 335–36; and, thus, the commission's determination that the sheds would violate the rear yard setback requirements was unsupported by the evidence. Id., 337. On appeal to this court, the commission had argued, in part, that the trial court improperly had determined that the 1983 variance had reduced the entire rear yard setback to six feet. Id., 338. We explained that "[t]he commission argue[d] that the 1983 variance was granted so that the plaintiff's

predecessor in title could erect one building only and never was intended to reduce the entire rear yard setback . . . . In support of that claim, the commission direct[ed] our attention to the site plan that was filed with the variance application in 1983, showing one proposed boat storage building. The commission . . . assert[ed] that the court [had] failed to consider the entire record and that it [was] clear that the variance was for one particular boat storage building. We disagree[d]." Id., 338–39.

A review of the record of the board meeting in *Dodson Boatyard, LLC,* disclosed that "the application [had] sought a variance to permit a reduction in the rear yard setback to six feet and an increase in the floor area ratio to 0.41 for the property . . . ." Id., 339. This application was approved by the board, and the record of decision noted that the "[b]uilding is needed to store and repair boats in the winter time." (Internal quotation marks omitted.) Id. The board then issued a certificate of variance, which was recorded in the land records, certifying that "a variance was granted for the premises 'to permit a reduction in rear yard setback to [six] feet and increase the floor area ratio to 0.41,' and that no limitations were imposed." Id. We further explained that although it was clear that "the reason for the application was to erect a boat storage building within the fifty yard setback . . . [t]here [was] nothing in the certificate of variance as granted that limit[ed] it to one building or to the proposed building shown on the site plan or to a particular part of the premises." Id. Accordingly, we agreed with the Superior Court that "the 1983 variance reduced the rear yard setback line . . . to six feet and that the record [did] not support the conclusion by the commission that the [sheds] were within the required setback." Id.

Similarly in the present case, the variances granted to the plaintiffs very clearly set forth the conditions

attached to them. There was no condition placed on the certificates that would give anyone knowledge that the plaintiffs or the future owners of this property forever would be precluded from modifying the property in any manner that was inconsistent with the plans submitted at the time that the plaintiffs' variances were granted, even if such modifications fully complied with the zoning regulations. We see no meaningful distinction between the case at bar and our holding in *Dodson Boatyard, LLC.* A variance runs with the land and is not personal to the parties applying for it; see General Statutes § 8-6 (b); and, if all interested parties, including subsequent purchasers of this property or neighboring property owners, are to have knowledge of the conditions placed on the property benefited by the variance, such conditions must be stated explicitly on the certificate of variance recorded in the land records. See General Statutes § 8-3d; *Dodson Boatyard, LLC* v. *Planning & Zoning Commission,* supra, 77 Conn. App. 338–39; P. Salkin, supra, § 13:36, pp. 13-103 through 13-104, and § 13:37, pp. 13-104 through 13-105.

On appeal, the board also raises two alternate grounds for affirming the judgment of the trial court dismissing the plaintiffs' appeal. First, it argues that the decision can be affirmed on the ground that the plaintiffs failed to appeal from the conditions placed on the 2001 variance and a subsequent denial, in 2006, of another variance request to build a similar uncovered deck. Second, it argues that "the plaintiffs waived their claims by admitting in the 2006 variance application that they were bound by the conditions of the 2001 certificate of variance." We are not persuaded by these alternate arguments. As we stated previously, a careful review of the variance certificates reveals that there were no conditions placed on the granting of the variances beyond "all construction be in conformance with the construction standards put forth by FEMA . . .

that the proposed harvesting and replanting of beach grass be scheduled for early spring" and "that the air conditioning units be 18 SEER or better." The fact that the plaintiffs did not appeal from the attachment of these conditions to their variances or that they allegedly conceded that they were bound by such conditions does not prove the point that they are not permitted to modify their home as permitted by the regulations. The conditions did not restrict the plaintiffs from seeking to construct an uncovered deck within the scope of the regulations. As to the defendant's argument that the plaintiffs are bound by their failure to appeal from the denial of the 2006 variance request to build a similar deck, we conclude that the plaintiffs would not need a variance to build something that was permitted under the regulations unless there was some condition placed on the property in the prior variances, which we already have concluded there was not. Accordingly, the plaintiffs' failure to appeal from the denial of a variance request that they were not required to obtain cannot provide the basis for refusing to consider the merits of this appeal. See generally *Dodson Boatyard, LLC* v. *Planning & Zoning Commission*, supra, 77 Conn. App. 338–39.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiffs' appeal.

In this opinion LAVINE, J., concurred.

GRUENDEL, J., concurring. I concur with the well reasoned majority opinion. When a zoning board of appeals elects to enumerate specific conditions in granting a variance, those conditions must be set forth with clarity. I write separately to address the line of precedent relied on by the defendant in this appeal, the zoning board of appeals of the town of Madison, and the trial

court in the proceeding below, regarding the import of the variance application in ascertaining the scope of a granted variance.

The precedent of our appellate courts instructs that, at times, a review of the variance application is of use in determining the proper scope of a variance granted by a zoning board of appeals. In *Raymond* v. *Zoning Board of Appeals*, 164 Conn. 85, 87, 318 A.2d 119 (1972), at issue was the plaintiff's ability to engage in the repair of motor vehicles on the property in question, which "[f]or many years prior to the plaintiff's application . . . had been used for a gasoline service station as a nonconforming use." On appeal, the plaintiff claimed, inter alia, that the Ridgefield zoning board of appeals years earlier had granted a variance permitting that activity on the property. Id., 86. In rejecting his claim, our Supreme Court looked to the plain language of the variance application. It stated: "On May 17, 1967, Else C. Jensen applied to the defendant board for a variance to permit the improvement, reconstruction and partial relocation of a gasoline station building located at 93 Wilton Road West, together with the improvement of appurtenant facilities to permit the applicant to continue operation of a gasoline station as a nonconforming use. The intended use to be made of the premises was stated as follows: 'Sale of gasoline and related products and general business uses ordinarily coincidental with the operation of a gasoline station.' On June 14, 1967, the defendant board granted the application for the variance." Id., 87. Utilizing that application to determine the scope of the variance granted, the court concluded that "[t]he variance granted in 1967 was not an extension of the nonconforming use to permit repairs. The application was for a variance to permit the applicant to continue operation of a gasoline station as a nonconforming use for the '[s]ale of gasoline and related products and general uses ordinarily coincidental with the

operation of a gasoline station.' This language contains no suggestion that the applicant was then seeking permission to engage in the repair of motor vehicles . . . ." Id., 87–88.

Similarly, this court in *L & G Associates, Inc.* v. *Zoning Board of Appeals*, 40 Conn. App. 784, 787, 673 A.2d 1146 (1996), addressed a claim that the trial court "improperly considered the entire public record, rather than considering solely the plain language of the variance certificate" to ascertain the scope of a granted variance. We began our analysis by noting that "[o]ur Supreme Court, in determining the use of property that a variance allows, has considered not only the language of the variance certificate, but also the specific use of the property proposed by the applicant, as set forth in the variance application. See *Raymond* v. *Zoning Board of Appeals*, [supra, 164 Conn. 87–88]. Courts in other states have also looked to both the variance application and the legal description of the property as it is set forth in the variance certificate to determine the uses that the variance allows." *L & G Associates, Inc.* v. *Zoning Board of Appeals*, supra, 787. In articulating our disagreement with the argument advanced by the appellant, we explained that "[t]he proposition that the scope of a variance is determined by examining the specific use proposed in the variance application and approved by the zoning board of appeals is a necessary corollary of the limited nature of variances." Id., 787–88. Thus, whereas the appellant insisted that the trial court improperly considered the variance application and the entire public record in determining the scope of the granted variance, this court concluded that "[t]he trial court would have been remiss had it failed to do so."[1]

---

[1] In light of this precedent, the trial court in the present case understandably stated in its memorandum of decision that our "courts are not restricted to the four corners of the variance certificate in determining the effect of a variance."

Id., 788; see also *Gangemi* v. *Zoning Board of Appeals*, 54 Conn. App. 559, 564, 736 A.2d 167 (1999) (relying in part on variance application to discern scope of granted variance), rev'd on other grounds, 255 Conn. 143, 763 A.2d 1011 (2001).

That precedent is grounded in practical and compelling considerations. First, it recognizes that a variance is no insignificant matter, as it runs with the land in perpetuity; see General Statutes § 8-6 (b); and constitutes "authority extended to the owner to use his property in a manner forbidden by the zoning enactment." *Burlington* v. *Jencik*, 168 Conn. 506, 508, 362 A.2d 1338 (1975). Because the granting of a variance "affords relief from the literal enforcement of a zoning ordinance, it will be strictly construed to limit relief to the *minimum variance* which is sufficient to relieve the hardship." (Emphasis added; internal quotation marks omitted.) *L & G Associates, Inc.* v. *Zoning Board of Appeals*, supra, 40 Conn. App. 788; see also 3 E. Yokley, Zoning Law and Practice (4th Ed. MacGregor 2010) § 20-13, p. 20-64 (variance granted "must be the minimum one sufficient to relieve the hardship complained of"); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 9:8, p. 263 (strict construction of variance ensures that "minimum variance to relieve the hardship" granted); 8 E. McQuillin, Municipal Corporations (3d Ed. Rev. 2000) § 25.162 (variances "should be strictly construed"). That strict construction effectuates the "essential purpose of a board of appeals" to furnish "elasticity in the application of regulatory measures so that they do not operate in an arbitrary or confiscatory, and consequently unconstitutional, manner"; *Florentine* v. *Darien*, 142 Conn. 415, 425, 115 A.2d 328 (1955); accord 4 P. Salkin, American Law of Zoning (5th Ed. 2010) § 39:7, p. 39-26 (zoning board of appeals "created to interpret, to perfect, and to insure the validity of zoning"); while at the same time adhering

to the well established principle that the variance power should be carefully exercised in limited fashion. See, e.g., *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996) (power to grant variance should be sparingly exercised); *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 271, 588 A.2d 1372 (1991) (power to authorize variance only granted for relief in specific and exceptional instances); *Baccante* v. *Zoning Board of Appeals*, 153 Conn. 44, 47, 212 A.2d 411 (1965) (power to grant variance exercised "only to avoid an unnecessary hardship"). Permitting a reviewing court in certain circumstances to look to the variance application helps ensure that its interpretation of the scope of a granted variance is limited to the minimum necessary to relieve the hardship demonstrated by the applicant.

On a more basic level, the aforementioned precedent embodies principles of fundamental fairness, in that—absent an indication to the contrary by the zoning board of appeals—the scope of a granted variance should not be interpreted to extend beyond that requested by the applicant and considered by the board.[2] By way of example, consider the property owner with a relatively straightforward variance application seeking to construct a ten foot by ten foot shed on the westerly side of the applicant's five acre property. Because of the unique nature of the parcel and the local setback requirements, the applicant requests a twenty foot side yard variance. Throughout the variance application, the accompanying documentation and the representations of the applicant at the public hearing, the zoning board

---

[2] Just as "[i]t is axiomatic that an appellate decision stands only for those issues presented to, and considered by, the court in that particular appeal"; *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 582 n.10, 930 A.2d 739, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007); I believe variances must be interpreted to grant no more relief than that requested by an applicant and that which is demonstrated to be necessary to alleviate the hardship.

of appeals repeatedly is assured that the scope of the variance requested is simply to permit the construction of a ten foot by ten foot shed within the side yard setback. Accordingly, the board grants the variance requested, stating simply that the applicant's request for a twenty foot side yard setback is approved. On appeal, should the scope of that variance be interpreted as if a twenty foot variance has been granted to run the full length of the westerly side yard setback of this five acre property? *Raymond* and *L & G Associates, Inc.*, answer that query in the negative, instructing that a reviewing court may instead look to what precise relief the applicants requested from the board in pursuing a variance from the local zoning regulations.[3]

Ideally, the zoning board of appeals in such instances carefully and precisely would articulate the parameters of the variance granted, whether through the imposition

---

[3] In *Dodson Boatyard, LLC* v. *Planning & Zoning Commission,* 77 Conn. App. 334, 338–39, 823 A.2d 371, cert. denied, 265 Conn. 908, 831 A.2d 248 (2003), this court rejected the defendant's reliance on *L & G Associates, Inc.*, for its contention that the trial court had failed to consider the entire record in determining the scope of the granted variance. In its one paragraph analysis of the issue, this court did not discuss or distinguish that precedent, nor did it cite to *any authority* to support that analysis. See id., 339. As such, it cannot be said that *Dodson Boatyard, LLC,* overruled sub silentio *L & G Associates, Inc.*, particularly in light of the established policy of this court dictating that "one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *First Connecticut Capital, LLC* v. *Homes of Westport, LLC,* 112 Conn. App. 750, 759, 966 A.2d 239 (2009). Since its publication in 2003, no appellate decision addressing a similar issue has cited to or relied on *Dodson Boatyard, LLC.* To the extent that *Dodson Boatyard, LLC,* contravenes the established precedent of our Supreme Court permitting a reviewing court to consider the variance application; *Raymond* v. *Zoning Board of Appeals,* supra, 164 Conn. 87–88; proper regard for our role as an intermediate appellate tribunal bound by the precedent of our Supreme Court precludes our reliance on that decision. See *DePietro* v. *Dept. of Public Safety,* 126 Conn. App. 414, 422 n.3, 11 A.3d 1149 (2011) (adhering to "the bedrock principle that, as an intermediate appellate body, we are not at liberty to discard, modify, reconsider, reevaluate or overrule the precedent of our Supreme Court").

of specific conditions or the use of limiting language.[4] We do not live in an ideal world, nor one where attorneys, architects and engineers alone populate local land use agencies. Rather, they are comprised of citizens from all walks of life, serving their communities on a voluntary basis. As our Supreme Court observed more than one half century ago, "[i]t must be borne in mind . . . that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards . . . ." *Couch* v. *Zoning Commission*, 141 Conn. 349, 358, 106 A.2d 173 (1954). Property owners requesting a slight variance from the local zoning regulations should not reap the windfall of a significantly vaster grant due to technical imprecision or inadvertence on the part of their fellow citizens in acting on the application as members of the zoning board of appeals. *Raymond* and *L & G Associates, Inc.*, recognize this reality by permitting a reviewing court to consider the proposed use presented to the board in the variance application in ascertaining the proper scope of a granted variance.[5]

That is not to say that a reviewing court in every instance must consider the variance application. In both

[4] For example, regarding the hypothetical set forth above, a board could grant a twenty foot side yard setback variance not to exceed a width of ten feet or a height of twelve feet and to be located within eighty feet of the rear property marker on the westerly side.

[5] In that respect, resort to review of a variance application is akin to the "exception" contained within our clearly erroneous standard of review. See generally *Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 613, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007). Though for the most part highly deferential to the determination of the body below, the clearly erroneous standard nevertheless permits reversal when a reviewing court possesses a definite and firm conviction that a mistake has been committed. See, e.g., *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 544, 893 A.2d 389 (2006). That, in essence, is what the courts confronted in reviewing the plaintiff's claim and the plain language of the variance certificate in *Raymond* and *L & G Associates, Inc.*

*Raymond* v. *Zoning Board of Appeals*, supra, 164 Conn. 87, and *L & G Associates, Inc.* v. *Zoning Board of Appeals*, supra, 40 Conn. App. 787, no conditions or limiting language were attached to the variances at issue. In such instances, a reviewing court is left to speculation and conjecture as to whether the respective boards considered the scope of the variances granted, which plainly "have no place in appellate review."[6] (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009). By contrast, the board in the present case was careful to enumerate specific conditions to the granted variance, and none prohibited the activity proposed in the plaintiffs' 2007 building permit request. The present case, thus, is distinguishable from the precedent relied on by the defendant in this appeal.

In my view, when a board elects to attach specific conditions to a variance, which "are inextricably linked, the viability of the variance being contingent upon the satisfaction of the conditions"; *Burlington* v. *Jencik*, supra, 168 Conn. 510; the canon expressio unius est exclusio alterius—the expression of one thing is the exclusion of another—should apply. In such instances, in which the board expressly evinces an intent to limit the scope of the variance granted, an inference that other conditions not mentioned were excluded by deliberate choice is warranted. See generally *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 319 n.15, 968 A.2d 396 (2009). Thus, in the absence of clearly articulated conditions, the representations contained in the variance application can be of use in defining the scope of the variance. However, when a board specifically enumerates conditions attached thereto, I believe

---

[6] "In hearing the plaintiff's appeal from the decision of the zoning board of appeals, the Superior Court acts as an appellate body." *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 603 n.1, 942 A.2d 511, cert. denied, 289 Conn. 901, 957 A.2d 871 (2008).

the variance application should not be used to impose one that the board has declined to set forth in its specified conditions. That view accommodates both the liberal discretion afforded to local land use agencies; see, e.g., *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 408–409, 920 A.2d 1000 (2007); and the policy of employing a strict construction of variances "to limit relief to the minimum variance which is sufficient to relieve the hardship." (Internal quotation marks omitted.) *L & G Associates, Inc.* v. *Zoning Board of Appeals*, supra, 40 Conn. App. 788.

Furthermore, even in those instances such as *Raymond* and *L & G Associates, Inc.*, in which the board has not imposed any conditions on the variance, resort to the variance application is not dispositive of the issue of its proper scope. Many times, the variance application may be ambiguous or imprecise as to what is being requested. That is the case here, as a review of the October 5, 2001 variance application by the plaintiffs, Victor Anatra and Heather Anatra, sheds little light on whether the activity proposed in the 2007 building permit request was contrary to the representations contained in the 2001 variance application. That application concerned only the construction of a residential building on the same footprint of an existing nonconforming structure. In that application, the plaintiffs represented that the "[r]esidential use [of the building] will remain the same without expanding the footprint of the building." They did not represent that no other buildings, which under the Madison zoning regulations included the proposed deck at issue here; see Madison Zoning Regs., § 19.4; would be constructed in the future, particularly ones in full compliance with the setback requirements contained in those regulations. As such, the variance application is, at best, ambiguous and, at worst, irrelevant to a consideration of the proper scope

of the granted variance. Yet *Raymond* and *L & G Associates, Inc.*, do not stand for the proposition that resort to a variance application is mandatory or determinative in such instances; rather, such review is but one tool for a reviewing court in certain circumstances to ascertain the proper scope of a granted variance. That tool has no use in the present case.

The precedent of *Raymond* and *L & G Associates, Inc.*, instructs that in determining the proper scope of a granted variance, a reviewing court at times may consider "not only the language of the variance certificate, but also the specific use of the property proposed by the applicant, as set forth in the variance application." *L & G Associates, Inc.* v. *Zoning Board of Appeals*, supra, 40 Conn. App. 787. Although such resort is not warranted in the present case, our decision today should not be read to contravene, let alone overrule, that precedent.